The CONSORTIUM, INC., and Steve Dorner, d/b/a Dorner Sales Company

v.

KNOXVILLE INTERNATIONAL ENERGY EXPOSITION; R.A.G., Inc.; and Bacon & Company, Inc.

Civ. 3-82-615.

United States District Court, E.D. Tennessee, N.D.

Feb. 14, 1983.

**58**

J. Edward Ingram, Knoxville, Tenn., for plaintiffs.

Jack M. Tallent, John M. Norris, Wayne Christeson, Knoxville, Tenn., for defendants.

### MEMORANDUM

ROBERT L. TAYLOR, Chief Judge.

This is an action for violations of the Sherman Antitrust Act, 15 U.S.C. §§ 1, 2. Plaintiffs also allege violations of state unfair competition law and state statutory prohibitions against inducing breach of contract pursuant to Tenn.Code Ann. § 47-15-113. Plaintiff, The Consortium, Inc., is the holder of a license to sell jackets, keychains, and embroidered patches marked with trademarks owned by defendant, the Knoxville International Energy Exposition (KIEE). The trademarks depict the symbol and name of the "1982 World's Fair," which was held in Knoxville, Tennessee. Plaintiff, Steve Dorner, is a wholesale buyer of Consortium's products. Dorner in turn sells the products to retailers. Defendants, R.A.G., Inc. and Bacon & Company, Inc., are also licensees of KIEE. The case is before the Court on defendants' motions to dismiss or for summary judgment and plaintiffs' motion for partial summary judgment.

Plaintiffs allege two violations in KIEE's trademark licensing scheme. First, they challenge threats by KIEE to sue plaintiffs' customers for trademark infringement. The customers were attaching licensed embroidered patches to unlicensed goods and selling the goods to the public. KIEE says it felt this practice infringed its trademarks and violated its licensing agreement with Consortium. Plaintiffs allege that KIEE, R.A.G., Inc., and Bacon & Company, Inc. conspired to restrain trade in the licensed patches by threatening the trademark infringement actions.

Plaintiffs also challenge a pricing provision in Consortium's licensing agreement with KIEE. The provision sets maximum sale prices for articles bearing KIEE's registered trademarks. Plaintiffs say the pricing provision is a *per se* violation of the antitrust laws. Alternatively, they allege that the provision is illegal under a "rule of reason" analysis. *See Chicago Board of Trade v. United States,* 246 U.S. 231, 38 S.Ct. 242, 62 L.Ed. 683 (1918).

Defendants move to dismiss or for summary judgment. First, they say that plaintiffs' alleged injuries are too remote from the threats of trademark enforcement for plaintiffs to recover under the Sherman Act.

In *Volasco Products Co. v. Lloyd A. Fry Roofing Co.,* a supplier of asphalt to a manufacturer of roofing materials sought to recover against the manufacturer's competitor. 308 F.2d 383 (6th Cir.1962), *cert. denied,* 372 U.S. 907, 83 S.Ct. 721, 9 L.Ed.2d 717 (1963). The competitor had allegedly conspired to fix prices of asphalt roofing products. The Sixth Circuit affirmed the dismissal of the supplier's action. Citing many authorities, the Court held:

> It is well established in the law that a supplier is too remote and too far removed from the direct injury to recover damages resulting from violation of the anti-trust laws directed against the supplier's customer.

*Id.* at 395.

■ Plaintiffs contend that *Volasco* is no longer controlling because the Sixth Circuit

rejected the "direct injury" test of standing in *Malamud v. Sinclair Oil Corp.,* 521 F.2d 1142 (6th Cir.1975); *see also Chrysler Corp. v. Fedders Corp.,* 643 F.2d 1229 (6th Cir. 1981). We agree that the Sixth Circuit has adopted liberal standing requirements in the antitrust field. *Chrysler Corp.,* 643 F.2d at 1236. The Court has not repudiated its holding in *Volasco,* however. *See Id.* A supplier of product components is too remote from an antitrust violation restraining trade in the finished product to recover damages.

The recent United States Supreme Court opinion in *Blue Shield of Virginia v. McCready* does not require a different result. 457 U.S. 465, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982). In *McReady* plaintiff was a subscriber of insurance covering psychiatric treatment. The insurance carrier denied plaintiff's claim for treatment provided by a clinical psychologist. Plaintiff alleged that the insurance carrier conspired with an organization of psychiatrists to limit the entry of psychologists in the psychotherapy market. In determining whether plaintiff's injury was "too remote from the alleged violation to warrant § 4 standing" the Supreme Court looked,

> (1) to the physical and economic nexus between the alleged violation and the harm to the plaintiff, and, (2) more particularly, to the relationship of the injury alleged with those forms of injury about which Congress was likely to have been concerned in making defendant's conduct unlawful and in providing a private remedy under § 4.

*Id.* at 478; 102 S.Ct. at 2548. The Court held that plaintiff had standing to assert the claim.

■ The standing considerations in *McReady* do not alter the rule in this circuit that a plaintiff may be too remote from the alleged violation to maintain an action for damages. *Chrysler Corp.,* 643 F.2d at 1236. The plaintiffs' posture in the instant case is clearly distinguishable from the plaintiff in *McReady.* Here, plaintiffs sold licensed patches to unlicensed customers who applied them to other products. The custom-

ers competed with R.A.G., Inc., Bacon & Co., Inc., and KIEE's other licensees in the sale of the trademark-bearing products. Plaintiffs were merely suppliers in the World's Fair souvenir marketing scheme. As such they may not recover damages for an alleged restraint on the sale of their customers' products incorporating the licensed patches.

■ Even if plaintiffs are not so removed from the alleged violation as to bar recovery of damages, their claim of illegality in KIEE's threatened litigation is without merit. The commencement of a lawsuit is not actionable under the Sherman Act unless the action is a "mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 511, 92 S.Ct. 609, 612, 30 L.Ed.2d 642 (1972). Likewise, activity to enforce legal rights, short of filing lawsuits, must also be protected if the right of access to the courts is to have significance. *See Pennwalt Corp. v. Zenith Laboratories, Inc.,* 472 F.Supp. 413 (E.D.Mich.1979), *appeal dismissed,* 615 F.2d 1362 (6th Cir.1980).

In the instant case, plaintiffs believed on the advice of competent legal counsel that the application of licensed trademark patches to unlicensed goods infringed KIEE's trademarks and created public confusion in violation of Lanham Act §§ 32 and 43. 15 U.S.C. §§ 1114, 1125. (Luedeka affidavit, Claussen affidavit). The Sixth Circuit has neither endorsed nor rejected the legal right KIEE claims. The Fifth Circuit, however, has indicated that it recognizes an infringement theory of unauthorized use of trademark-bearing patches. *See Boston Professional Hockey Association, Inc. v. Dallas Cap & Emblem Manufacturing, Inc.,* 510 F.2d 1004 (5th Cir.1975), *cert. denied,* 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98 (1975).

■ Resolution of this legal issue is not necessary to this case, however. Neither must we determine whether the contested trademark use was likely to cause public confusion. 15 U.S.C. § 1114. Plaintiffs

merely challenge KIEE's threats to litigate issues that are not well-settled. Such a theory of antitrust illegality must necessarily fail if the trademark and unfair competition laws are to be effectively enforced. *See Drop Dead Co. v. S.C. Johnson & Son, Inc.,* 326 F.2d 87, 96 (9th Cir.1963), *cert. denied,* 377 U.S. 907, 84 S.Ct. 1167, 12 L.Ed.2d 177 (1964). The legal precedent supporting defendants' theory and the existence of factual issues of confusion rebut any claim that the threatened litigation was a "mere sham." Accordingly, defendants' motions to dismiss this theory of antitrust violation must be granted.

Plaintiffs' second theory of recovery against KIEE is that price provisions in its licensing contract are illegal *per se* or illegal under a rule of reason analysis. KIEE contends that plaintiffs have not been injured by the terms and that the provisions are an *a fortiori* lawful means of protecting its trademarks.

The Consortium's licensing agreement, § 7, provides in pertinent part as follows: Licensee shall, prior to making any use of the Mark ... obtain KIEE's written approval of a list of maximum prices to be charged by Licensee ... for the goods ... approved by KIEE under this Agreement for use in connection with the Mark.

(b) The maximum prices provided by Licensee to KIEE pursuant to subsection (a), above, shall only be increased upon Licensee obtaining KIEE's written approval, which approval may be given or withheld by KIEE in its sole discretion.... Such prices, with respect to any particular good, product, material or service shall in no event be increased from and after the time such good, product, material or service is initially distributed for sale and shall remain at such prices throughout the duration of its usage.

■ Although plaintiffs seek treble damages for harm caused by this provision, neither has alleged a compensable injury under the Sherman Act. Plaintiff Doner was merely a purchaser of goods sold by Consortium. As such, he could have only benefited from the challenged maximum price limitation. His claim, therefore, must be dismissed.

■ Consortium, as licensee, does not state how it has been injured by its price agreement with KIEE. It has neither alleged nor indicated by affidavit that it could have charged its customers higher prices but for its contract with KIEE. Furthermore, Consortium was not inextricably tied to its initial maximum price agreement. The contract provided for price adjustments with KIEE's approval. Consortium failed to request any modification, however. Having failed to do so, it cannot now recover damages based on its speculations that KIEE would have vetoed a price increase and that Consortium could have profited by charging higher prices during the World's Fair.

■ KIEE submits that even if plaintiffs were injured, they have no substantive claim here. The Sherman Act prohibits resale price fixing. *Albrecht v. Herald Co.,* 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968). KIEE's trademark licensing, however, was not a "resale" price restraint. KIEE and Consortium merely entered into a joint venture or "partnership" by which the trademark owner shared its goodwill with the licensee in exchange for a share of profits. *See Evans v. S.S. Kresge Co.,* 544 F.2d 1184, 1192 (3rd Cir.1976) *cert. denied* 433 U.S. 908, 97 S.Ct. 2973, 53 L.Ed.2d 1092 (1977). KIEE never "sold" a product for resale. Partnership agreements to set the price of jointly produced goods are not *per se* violations of the Sherman Act. *See Broadcast Music, Inc. v. Columbia Broadcasting System, Inc.,* 441 U.S. 1, 9, 99 S.Ct. 1551, 1557, 60 L.Ed.2d 1 (1979).

Even if the absence of the "resale" element does not validate KIEE's licensing arrangement, the price provisions are not necessarily *per se* illegal. In *Broadcast Music* the Supreme Court rejected a *per se* challenge to the blanket licensing of copyrighted songs. *Id.* The blanket license did involve price fixing in the literal sense. *Id.*

at 8, 99 S.Ct. at 1556. The Court, however, further examined the application of *per se* rules to business conduct. It held:

[t]his is not a question simply of determining whether two or more potential competitors have literally "fixed" a "price." As generally used in the antitrust field, "price fixing" is a shorthand way of describing certain categories of business behavior to which the *per se* rule has been held applicable. The Court of Appeals' literal approach does not alone establish that this particular practice is one of those types or that it is "plainly anticompetitive" and very likely without "redeeming virtue." Literalness is overly simplistic and often overbroad. When two partners set the price of their goods or services they are literally "price fixing," but they are not *per se* in violation of the Sherman Act. *See United States v. Addyston Pipe & Steel Co.,* 85 F. 271, 280 (CA6 1898), *aff'd,* 175 U.S. 211 [20 S.Ct. 96, 44 L.Ed. 136] (1899). Thus, it is necessary to characterize the challenged conduct as falling within or without that category of behavior to which we apply the label "*per se* price fixing." That will often, but not always, be a simple matter. . . . [i]t is only after considerable experience with certain business relationships that courts classify them as *per se* violations. . . . We have never examined a practice like this one before.

*Id.* at 8–10, 99 S.Ct. at 1556–1557.

Neither the parties nor independent research has revealed a case applying a *per se* rule to trademark licensing provisions similar to those at issue here. As did the blanket license in *Broadcast Music,* KIEE's arrangement falls outside that "category of business behavior to which the *per se* rule has been held applicable." *Id.* We therefore must determine whether the price restrictions are so "plainly anticompetitive" and "without redeeming virtue" that a *per se* rule should nevertheless be applied. *See Id.*

First, the contract provision is not "plainly anticompetitive." Consortium apparently set its own price ceilings at the com-

mencement of its license. It also had the option to request price increases during the license term. Clearly, the licensee could lower prices to meet competition from other souvenir suppliers.

Defendant contends that the instant price provisions are analogous to the price restrains in *Albrecht v. Herald Co.,* 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998. In *Albrecht,* however, illegal resale price restrictions were used to blunt the "pernicious consequences of another distribution practice" created by the defendant. *Id.* at 154, 88 S.Ct. at 874. Congress, by statute, recognized that trademark owners possess certain exclusive distribution rights not present in the *Albrecht* distribution scheme. 15 U.S.C. § 1114. By so doing, Congress sanctioned certain anti-competitive consequences of trademark ownership and use. To the extent KIEE's licensing scheme is anti-competitive, this is attributable to the nature of the trademark rights, rather than any price restrictions placed on the licensee.

In this light, the "redeeming virtues" of the agreement are manifest. KIEE had a legitimate interest in preserving the good will associated with the 1982 World's Fair and Fair-related trademarks. The agreed price restrictions served only to curtail abuse of the licensee's monopoly power in the trademark-bearing items. The provisions were therefore a legitimate means of maintaining control over KIEE's marks. Courts have traditionally required trademark owners to exercise such control over the licensed use of their marks or risk losing trademark protection. *See Haymaker Sports, Inc. v. Turian,* 581 F.2d 257, 261 (C.C.P.A.1978). We must conclude that Consortium's agreement with KIEE is not illegal *per se.*

The final antitrust issue in this case is whether the pricing restrictions can survive "a more discriminating examination under the rule of reason." *Broadcast Music,* 441 U.S. at 24, 99 S.Ct. at 1564. KIEE contends that the restrictions are an *a fortiori* lawful device to protect its trademarks. Plaintiffs have relied primarily on the *per se* theory to challenge the price provisions. They do al-

lege, however, that there are issues of fact that bar summary judgment under the "rule of reason."

Justice Brandeis in *Chicago Board of Trade v. United States* pronounced the analysis required:

> Every agreement concerning trade, every regulation of trade, restrains. To bind, to restrain, is of their very essence. The true test of legality is whether the restraining imposed is such as merely regulates and perhaps thereby promotes competition or whether it is such as may suppress or even destroy competition. To determine that question the court must ordinarily consider the facts peculiar to the business to which the restraint is applied; its condition before and after the restraint was imposed; the nature of the restraint and its effect, actual or probable. The history of the restraints, the evil believed to exist, the reason for adopting the particular remedy, the purpose or end sought to be attained, are all relevant facts. This is not because a good intention will save an otherwise objectionable regulation or the reverse; but because knowledge of intent may help the court to interpret facts and to predict consequences.

246 U.S. 231, 238, 38 S.Ct. 242, 243, 62 L.Ed. 683 (1918).

Plaintiffs fail to point out how the instant pricing provisions suppress or destroy competition in an identifiable product market. *See id.; United States v. E.I. du Pont de Nemours & Co.,* 351 U.S. 377, 394–395, 76 S.Ct. 994, 1006–1007, 100 L.Ed. 1264 (1956). They suggest that KIEE could have licensed others to compete with Consortium in the sale of trademark bearing goods. This strategy, they say, would have allowed the market to set the price of these products. Plaintiffs fail to recognize that such unrestricted licensing would have effectively destroyed KIEE's exclusive trademark rights and impaired the value of Consortium's own license. Wide scale licensing was therefore not a viable less restrictive alternative.

Other than postulate that other alternatives exist, plaintiffs merely deny KIEE's claim that the provisions are a legitimate trademark licensing device. "Mere denials" of reasonableness will not defeat defendant's motion for summary judgment. *See* Fed.R.Civ.P. 56(e); *Daily Press, Inc. v. United Press International,* 412 F.2d 126 (6th Cir.1969), *cert. denied,* 396 U.S. 990, 90 S.Ct. 480, 24 L.Ed.2d 453 (1969).

Finally, plaintiffs allege violations of Tennessee statutory and common law. We decline to entertain these pendent state claims in the absence of a substantial federal claim. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

For all the foregoing reasons, it is ORDERED that the motions of defendants Knoxville International Energy Exposition, R.A.G., Inc., and Bacon & Company, Inc. to dismiss or for summary judgment be, and the same hereby are, granted.

It is further ORDERED that plaintiffs' motion for partial summary judgment be, and the same hereby is, denied.

Order Accordingly.