SPANISH INTERNATIONAL COMMU-
NICATIONS CORPORATION, SIN,
INC., Bahia De San Francisco Tele-
vision Company and the Seven Hills
Television Company, Plaintiffs,

v.

Matthew L. LEIBOWITZ, Defendant.

No. 84–0655–CIV–Aronovitz.

United States District Court,
S.D. Florida.

Feb. 26, 1985.

Daniel R. Shulman, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, Minn., Joseph M. Alioto, Alioto & Alioto, San Francisco, Cal., R. Randall Wolley, II, Neal & Wolley, Dallas, Tex., Angel Castillo, Morgan, Lewis & Bockius, Miami, Fla., for plaintiffs.

Edward P. Henneberry, Eberhard W. Pfaller, Jr., Howrey & Simon, Washington, D.C., James J. Kenny, Kenny, Nachwalter & Seymour, Miami, Fla., for defendant.

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DISMISSING THE FEDERAL CLAIMS IN THE AMENDED COMPLAINT WITH PREJUDICE

ARONOVITZ, District Judge.

THIS CAUSE came on for a hearing before the Court upon Defendant MATTHEW L. LEIBOWITZ' Motion to Dismiss Plaintiff's First Amended Complaint (D.N. 26).[1] Counsel for the various parties appeared at the hearing on January 7, 1985, and presented their views regarding the pending motion. The Court heard argument by counsel and carefully considered the motion, the supporting and opposing memoranda filed thereto, the pertinent portions of the record, the applicable law and being otherwise fully advised in the premises, it is thereupon

ORDERED AND ADJUDGED that said motion be, and the same is, hereby GRANTED. As to all federal claims asserted herein, those claims of the Amended Complaint are hereby DISMISSED WITH PREJUDICE. As to all state ·claims asserted herein, those claims of the First Amended Complaint are hereby DISMISSED WITHOUT PREJUDICE for reassertion in state court pursuant to the decision of *United Mine Workers of America*

v. *Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

This action alleges violations of federal antitrust laws against an individual attorney who represents an organization by the name of Spanish Radio Broadcasters of America, Inc. ("SRBA"). More specifically, the Amended Complaint speaks to Defendant LEIBOWITZ' conduct in his representation of SRBA in a Federal Communications Commission ("FCC") proceeding wherein claims were filed against Plaintiffs in the instant suit including SPANISH INTERNATIONAL COMMUNICATIONS CORPORATION ("SICC"). In essence, the Amended Complaint alleges that Defendant LEIBOWITZ has filed "baseless and repetitive claims" with the FCC. [Amended Complaint at Paragraph 22(b).]

There exist two separate and several grounds upon which the instant dismissal is predicated. First, a lawyer, such as Defendant LEIBOWITZ, cannot be held personally liable for acts undertaken in the normal course of representing a client. Second, the Amended Complaint at bar fails to allege facts which support a claim that Defendant LEIBOWITZ engaged in any activity not constitutionally protected and immune from an antitrust attack under the Noerr-Pennington doctrine. Under either of these two grounds, the Court finds that dismissal of the instant Amended Complaint is warranted.

1. *The Amended Complaint Fails to Negate Defendant's Status as an Attorney, Who, at All Material Times Was Engaged in Representation of His Client*

■ An examination of the Amended Complaint reveals a lack of sufficient factual allegations which negate Defendant's status as an attorney. Moreover, given the factual circumstances alleged in the Amended Complaint, the Court finds that Plaintiff cannot allege with requisite suffi-

---

1. It should be noted that a prior Motion to Dismiss was filed by Defendant and thereafter granted by the Court (Order entered July 3, 1984—D.N. 31) with leave to the Plaintiffs to file

an amended complaint so that Plaintiffs could correct the deficiencies noted in their initial complaint and addressed herein.

ciency any acts undertaken by Defendant which could render him personally and individually liable for actions taken in a capacity apart and distinct from his role as an attorney. At Paragraph 4 of the Amended Complaint, it is alleged that "Defendant is and has been counsel" at all material times. Yet, at Paragraph 22(f), the Amended Complaint states that Defendant LEIBOWITZ acted "not solely as an attorney providing legal service, but as a person involved in the formulation of policy for the conspirators, as a planner of the conspiracy, and one of the prime implementors and actors in the conspiracy[.]" The Amended Complaint then proceeds to list thirteen "acts", none of which negate Defendant's status as an attorney acting within the scope of his profession. In fact, each of the enumerated alleged acts constitutes duties performed during the course of representing a client before an administrative agency.

Quite simply, there are no factual allegations which would support the contention that Defendant had any interest in the proceedings before the Federal Communications Commission other than an interest as an attorney representing his client. The Amended Complaint alleges no financial, business or economic interest held by Defendant. Moreover, the Amended Complaint does not allege that Defendant enjoyed a status as a principal in the matter at hand.

In *Invictus Records, Inc. v. American Broadcasting Companies, Inc.*, 98 F.R.D. 419 (E.D.Mich.1982), a district court granted summary judgment in favor of attorney/defendants in an antitrust case, despite allegations (as here) of sham lawsuits, holding that defendants acted merely as legal advisors:

> That [the attorney/defendants] participated in negotiations on [their client's] behalf with ABC, expressed a legal opinion that his contract with plaintiffs was not binding and planned a law-suit to test that opinion, which is all the facts alleged by plaintiffs demonstrate, is not inconsistent with their role as legal advisors to [their client]. That they were apparently

> successful or at least vigorous and persistent on behalf of their client does not take them beyond the protection of *Tillamook Cheese*. [358 F.2d 115 (9th Cir. 1966)] They were, at least as has been shown on this record, acting as legal advisors and nothing more. Only by engaging in speculation rather than reasonable inference can an antitrust violation be found.

98 F.R.D. at 429–430. Although Plaintiffs' Amended Complaint cosmetically states that "[t]he actions of LEIBOWITZ for which Plaintiffs seek to impose liability . . . do not include the providing of legal advice as an attorney" (Amended Complaint at Paragraph 4), the centerpiece of Plaintiffs' Amended Complaint is the filing of a lawsuit (Amended Complaint at Paragraph 22), which *Invictus* states *is* acting as "legal advisor". From the allegations in the instant Amended Complaint then, the Court can only surmise that Plaintiffs are improperly claiming that Defendant gave legal advice which somehow gives rise to personal liability. In short, it *affirmatively appears* that the claim against the defendant alleges a status that is wholly and solely as an attorney. According to the Amended Complaint, there was nothing other than legal advice involved. Therefore, the instant Amended Complaint in failing to negate Defendant's status as an attorney warrants dismissal under the rationale of *Invictus*. Further, the instant Amended Complaint is properly subject to dismissal pursuant to the instant Motion to Dismiss in view of the fact that Plaintiffs have already been afforded an opportunity to correct this deficiency.

2. *The Amended Complaint Fails to Support a Claim that Defendant Engaged in Any Activity Not Constitutionally Protected and Immune from Antitrust Attack Under the Noerr-Pennington Doctrine.*

■ The instant Amended Complaint also warrants dismissal on a constitutional level. If the allegations against Defendant, essentially contained in Paragraph 22 of the Amended Complaint, are closely

scrutinized, they can be broken down as follows. Paragraph 22(a) alleges that "other named conspirators have collectively boycotted and refused to do business with Plaintiff." This Paragraph of the Amended Complaint expressly exempts Defendant as a participant in the alleged boycott. As to all the remaining subparagraphs under Paragraph 22, there are no sufficient statements of fact to establish antitrust violations. Instead these allegations are wholly conclusory and hence insufficient from a pleading standpoint. *See California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972).

■ As the Court views it, the thrust of Plaintiffs' action goes to Defendant's activities in instituting and maintaining the FCC action. The Court takes judicial notice of the fact that the pleadings filed by Defendant LEIBOWITZ were not "baseless" as alleged by Plaintiffs because as a result of pleadings filed by Defendant LEIBOWITZ, the SRBA succeeded in having an investigation into the SICC/Spanish International Network, Inc. ("SIN") relationship conducted by the FCC which ultimately and unanimously designated Plaintiffs' licenses for hearing:

2. ... As a result of information provided in SRBA's filings, an investigation was conducted into the SRBA allegations ...

3. Information obtained by the Commission's staff as a result of the investigation raises a serious question as to whether the captioned stations are under alien control in violation of [federal law].

*In re SICC,* MM Docket No. 83–540, Memorandum Opinion and Order at Paragraphs 2, 3 (adopted May 26, 1983; released June 16, 1983); 48 Fed.Reg. 28,549 (June 23, 1983).

As such, the formal order by the full commission leaves no doubt that the pleadings filed by Defendant LEIBOWITZ are far from "baseless". Moreover, Plaintiffs' conclusory allegations concerning supposed "ex parte contacts" and recruitment of FCC attorneys actively involved in the administrative proceedings are nothing more than red herrings. The Court is entitled to, and in fact does, take judicial notice of the fact that the presiding administrative law judge in the FCC proceeding held that no improper influence was exerted on the Commission's decision to designate the licenses because "[t]hat order was adopted by the Commission without dissent, and SICC's largely speculative allegations are insufficient to warrant an inquiry into the propriety of that action." *In re SICC,* MM Docket No. 83–540, Order issued March 14, 1984 at page 2.

On a more substantive constitutional level, the Amended Complaint must fail under established antitrust doctrine. A trilogy of cases decided by the Supreme Court has established an exemption from the antitrust laws for solicitation of government action, known as the "Noerr-Pennington" exemption. *Eastern Railroad President's Conference v. Noerr Motor Freight Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). As expressly recognized in *California Motor Transport,* the primary basis for the Noerr-Pennington exemption rests on fundamental First Amendment freedoms:

We conclude that it would be destructive of rights of association and of petition to hold that groups with common interest may not, without violating the antitrust laws, use the channels and procedures of state and federal agencies and courts to advocate their causes and point of view respecting resolution of their business and economic interest *vis-a-vis* their competitors.

404 U.S. at 510–511, 92 S.Ct. at 611–612.

Plaintiffs seek to impose liability on Defendant LEIBOWITZ for allegedly filing pleadings with the federal government, and supposedly communicating the essence of such pleadings to third parties. The Noerr-Pennington doctrine has more than a passing effect on such a situation where an

attorney representing a party before an administrative board is involved. In fact, the Court can think of no specific set of facts which could be more appropriate for invocation of the Noerr-Pennington doctrine than the set of facts at bar. Accordingly, in obvious recognition of the fact that the conduct allegedly engaged in by Defendant LEIBOWITZ is constitutionally protected activity immune from Sherman Act attack, Plaintiffs' Amended Complaint plainly seeks to implicate the so-called "sham" exception to the Noerr-Pennington doctrine.[2]

In *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972), the Supreme Court construed the "sham exception" as encompassing:

> a pattern of baseless, repetitive claims ... effectively barring respondents from access to the agencies and courts ... [which] cannot acquire immunity by seeking refuge under the umbrella of "political expression."

404 U.S. at 513, 92 S.Ct. at 613. It is clear that the actions allegedly undertaken by Defendant LEIBOWITZ are immune from antitrust attack under the Noerr-Pennington doctrine, unless Plaintiffs properly plead facts sufficient to bring Defendant LEIBOWITZ' activity under the "sham exception". In fact, the Amended Complaint states only legal conclusions rather than facts and thus this Court dismisses the Amended Complaint in the interests of promoting judicial economy and to prevent the infliction of needless expense on the parties.

3. *The Instant Amended Complaint Warrants Dismissal Pursuant to a Motion to Dismiss Rather Than a Motion for Summary Judgment.*

■ Although the Court is keenly aware of the liberal pleading standards set forth in *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), as well as its edict that motions to dismiss should not be taken

lightly, the instant Amended Complaint is clearly ripe for dismissal with prejudice on Defendant's Motion to Dismiss. Allegations of conduct violative of the antitrust laws without a statement of the facts constituting such conduct is a mere allegation of a legal conclusion and is therefore insufficient to state a claim under the antitrust laws. *See United States v. Air Florida, Inc.,* 534 F.Supp. 17, 20 (S.D.Fla.1982) ("the Court need not accept conclusions of law or sweeping legal conclusions cast in the form of factual allegations"). The inadequacy of conclusory pleading of antitrust claims is even more striking, however, when the conclusory pleading involves, as here, an attempt to invoke the "sham exception" to Noerr-Pennington antitrust immunity. The presence of protected First Amendment freedoms has caused many courts to require specific factual pleading. When complaints have failed to live up to these standards, many courts have dismissed them pursuant to Federal Rule of Civil Procedure 12(b)(6).

The seminal case in this regard is *Franchise Realty Interstate Corp. v. San Francisco Local Joint Executive Board of Culinary Workers,* 542 F.2d 1076 (9th Cir. 1976), *cert. denied,* 430 U.S. 940, 97 S.Ct. 1571, 51 L.Ed.2d 787 (1977). *Franchise Realty* involved an antitrust complaint by two McDonald's Corp. subsidiaries, alleging a conspiracy between two hotel and restaurant associations and a labor union. Plaintiffs alleged that the defendant employee organizations conspired to oppose, repeatedly, baselessly and in bad faith, the granting of building permits by a San Francisco city agency. 542 F.2d at 1078. Defendants filed a motion under Rule 12(b)(6) to dismiss the complaint in *Franchise Realty* for failure to state a claim.

The *Franchise Realty* plaintiffs argued that the "sham exception" applied, but the court rejected plaintiffs' bald allegation:

> This is not an ordinary case. The Supreme Court has recognized that the

---

**2.** For further discussion of the "sham" exception to the Noerr-Pennington doctrine and Plaintiffs' lack of a sufficient basis to invoke the sham

exception under the alleged facts, see the next section of the instant Memorandum Opinion. Section 3 *infra.*

right to associate and to petition an administrative agency to take official action in the exercise of its powers is guaranteed by the First Amendment ... Yet McDonald's would have us hold, in effect, that a claim for relief under the Sherman Act is stated by a mere conclusory allegation that this right is being exercised for the purpose of barring a competitor from access to the agency. We decline this invitation because to condition the right to associate and petition on the motivations of the petitioners would have a chilling effect on exercise of this fundamental First Amendment right, and such a ruling would in a practical sense render the Trucking Unlimited exception coextensive with the Noerr immunity.

542 F.2d at 1082 (citation omitted). In order to prevent such a chill from being imposed upon antitrust defendants and to preclude the sham exception from swallowing the Noerr-Pennington rule, the Court then held that for conduct presumptively protected by the First Amendment, a complaint seeking to invoke the sham exception "requires more specific allegations than would otherwise be required." 542 F.2d at 1083. The concomitant rigorous scrutiny of the plaintiff's complaint in *Franchise Realty* caused the Ninth Circuit to affirm the dismissal of McDonald's First Amended Complaint with prejudice. 542 F.2d at 1078.

The rationale proffered by the *Franchise Realty* court illuminates the necessity for requiring more specific allegations supporting application of the sham exception. Actions presumptively protected under the First Amendment, such as the pleadings and communications that Plaintiffs attribute to Defendant LEIBOWITZ, are likely to be chilled by the mere pendency of legal actions attacking such conduct:

Regardless of what the actual facts might be, what plaintiff interested in deterring his competitors' opposition before a governmental body would fail to recite in its complaint the conclusory "access-barring" incantation? And what competitor, knowing that its participation in administrative proceedings might result in expensive and burdensome litigation, which would drag on through the discovery stage at least, would not thereby feel pressured to forego presenting its views to the government? Particularly in antitrust litigation, the long drawn out process of discovery can be both harassing and expensive. When this well known fact is combined with the large damages usually claimed (here at $11,-100,000.00) and sometimes awarded, an action like this one can be, from the very beginning, a most potent weapon to deter the exercise of First Amendment rights.

*Franchise Realty,* 542 F.2d at 1082. Notably, Plaintiffs in the instant action allege damages of "at least $10 million." [Amended Complaint at Paragraph 23.] Plaintiffs, through the vehicle of complex antitrust actions alleging huge damages, have attacked the SRBA, the *only* party in an adversarial posture to Plaintiffs in the FCC action, and Defendant LEIBOWITZ, who was and continues to be an attorney for the SRBA.

Significantly, a growing number of jurisdictions have engaged in analyses similar to the *Franchise Realty* court in confronting assertions of the sham exception to the Noerr-Pennington doctrine. In *Bethlehem Plaza v. Campbell,* 403 F.Supp. 966 (E.D. Pa.1975), the district judge granted a Rule 12(b)(6) motion to dismiss an antitrust complaint brought by a shopping center developer against two other developers:

... in a general, conclusory and unspecific fashion, the complaint alleges other organizational activities committed in furtherance of the conspiracy. We cannot assume the truth of this allegation for there are no supporting facts which can be taken as true for the purpose of our ruling. We recognize, of course, the plaintiff's sincere hopes and expectations that the discovery process will yield concrete factual data to fill these voids and the principles of notice pleading in the Federal Rules, but we cannot ignore important countervailing constitutional principles. To allow the complaint to

stand on the basis of these expectations and otherwise privileged conduct under the Sherman Act would certainly deter antitrust violators, but would at the same time seriously endanger the exercise of protected statutory and constitutional rights, a result which has been countermanded in *Noerr.*

403 F.Supp. at 971.

In *Mark Aero Inc. v. Trans World Airlines, Inc.,* 580 F.2d 288 (8th Cir.1978), the Court granted the defendant's motion to dismiss an amended complaint alleging antitrust claims concerning opposition by competitive airlines to the plaintiff's use of an old municipal airport in Kansas City. Similar to Plaintiffs' claims here, the plaintiff alleged that the defendant airlines engaged in a publicity campaign, induced the local aviation authority to refuse to apply to the Federal Aviation Administration for approval of a security plan, and made and induced others to make false and misleading statements to the City Council. 580 F.2d at 297. The Court brushed aside the plaintiff's assertion of the sham exception and held that "what is being complained about is genuine political activity, protected by the first amendment rights of free speech and freedom of petition." *Id.*

Finally, the case of *City of Gainesville v. Florida Power & Light Co.,* 488 F.Supp. 1258, 1266 (S.D.Fla.1980), is instructive. In that case, pursuant to Rule 12(b)(6), the Court sitting in this District granted a motion to dismiss an antitrust counterclaim which alleged sham litigation. The Court held, much like this Court holds today, that the claims contained in the antitrust counterclaim were "entirely conclusory".

Plaintiffs' Amended Complaint fails to state facts, as opposed to legal conclusions, which would invoke the "sham exception" to Noerr-Pennington immunity. Far from stating concrete facts, Plaintiffs have attempted to invoke the "sham exception" by repeating talismanic phraseology. In their Amended Complaint, Plaintiffs refer to the pleadings filed by Defendant LEIBOWITZ by utilizing the words "sham" thirteen times, "false" or "falsely" eleven times,

and the phrase "baseless and repetitive" no less than fourteen times. Nor does the Amended Complaint state facts to buttress the naked allegations of sham pleadings. Such conclusory pleading is not sufficient to withstand a motion to dismiss. In short, it is precisely the type of complaint which courts have repeatedly dismissed as failing to state a claim, in order to preclude unwarranted antitrust attacks on the exercise of basic First Amendment rights.

### 4. *The Pendent State Claims Warrant Dismissal for Refiling in State Court.*

■ Plaintiffs' Amended Complaint also appears to allege at Subparagraphs 22(b) through 22(f) common law claims under Florida law. Specifically, these subparagraphs appear to allege the common law claim of tortious interference. This tort theory of recovery has long been recognized under Florida law. *Dade Enterprises, Inc. v. Wometco Theatres,* 119 Fla. 70, 160 So. 209 (1935); *See Royal Typewriter Company, a Division of Litton Systems, Inc. v. Xerographic Supplies Corporation,* 719 F.2d 1092 (11th Cir.1983); *Manufacturing Research Corp. v. Greenlee Tool Co.,* 693 F.2d 1037 (11th Cir.1982).

Such state claims would necessarily be properly before this Court under its pendent jurisdiction. However, due to the preceding dismissal of the federal antitrust claims, those pendent state claims contained in the Amended Complaint are hereby DISMISSED WITHOUT PREJUDICE pursuant to *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Such state claims are therefore subject to refiling in state court should Plaintiffs desire to so refile.

In conclusion, based on the allegations of the First Amended Complaint, it is apparent that Defendant is representing a client before the FCC and that the pendency of the instant litigation offers opportunities for the opposition to claim a conflict of interest and thereby compel disqualification of Defendant LEIBOWITZ as counsel for

the SRBA. This smacks of a legal ploy which this Court refused to condone. Inasmuch as Defendant is the attorney for the SRBA in a pending Texas action of a strikingly similar nature, the instant ruling regarding the Noerr-Pennington doctrine and/or the legal effect of the action against the instant Defendant may or may not have legal significance on the pending motions for summary judgment in said Texas action.