**LETICA CORPORATION, Plaintiff,**

v.

**SWEETHEART CUP COMPANY, INC., Defendant.**

**No. 91–74639.**

United States District Court, E.D. Michigan, S.D.

April 30, 1992.

Thomas N. Young, Krass & Young, Troy, Mich., for plaintiff.

Michael Husmann, Milwaukee, Wis., William Snyder, Chicago, Ill., Donald S. Young, Detroit, Mich., for defendant.

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COUNTS III, IV AND V OF PLAINTIFF'S FIRST AMENDED COMPLAINT

GADOLA, District Judge.

On September 11, 1991, plaintiff filed the instant action alleging, among other things, unfair competition and antitrust violations by defendant Sweetheart Cup Company. Defendant subsequently filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). The motion was initially dismissed without prejudice for defendant's failure to seek concurrence. Defendant refiled the motion to dismiss on December 17, 1992. The motion was again dismissed on January 31, 1992, when plaintiff was granted leave to amend the complaint in an effort to cure the deficiencies alleged in defendant's motion.

On February 26, 1992, defendant again filed a motion to dismiss counts III, IV and V of the amended complaint. Plaintiff filed its response on March 20, 1992; and defendant filed a reply brief on March 27, 1992. Pursuant to LR 7.1(e)(2) (E.D.Mich. Jan. 1, 1992), no oral arguments were heard. Upon review, defendant's motion shall be granted, dismissing counts III, IV and V of plaintiff's amended complaint.

### FACTS

This case arises out of defendant's manufacture of certain disposable drink cups with gray and white bands and a burgundy leaf. The distinctive, burgundy leaf has been identified by both parties to be defendant's PREFERENCE trade dress and protected under the applicable trade dress laws. Subsequent to defendant's copyright of the PREFERENCE trade dress, plaintiff began manufacturing a disposable drink

cup referred to as the MAUI cup. The MAUI cup is alleged to have gray and white bands and a distinctive, burgundy whale's tail.

Defendant perceived the MAUI cup as being so similar to its PREFERENCE cup that defendant believed plaintiff had infringed on its protected trade dress rights. Accordingly, in a letter dated August 5, 1991, defendant demanded that plaintiff immediately cease manufacture of the MAUI cup or face swift legal enforcement of its trade dress rights. In response to the threatened litigation, plaintiff initiated the instant action seeking declaratory judgment that it had not infringed on defendant's trade dress. The complaint further alleged unfair competition and antitrust violations.

Defendant filed a counterclaim alleging violations of the Lanham Act, 15 U.S.C. § 1125, for false designation of origin and false description or representation, in addition to common law trade dress infringement and unfair competition. Defendant then filed the instant motion to dismiss with regard to the unfair competition and antitrust allegations.

## STANDARD OF REVIEW

Upon a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), all allegations in the complaint are to be accepted as true and construed in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *United States v. Mississippi*, 380 U.S. 128, 143, 85 S.Ct. 808, 816, 13 L.Ed.2d 717 (1965).

The court's inquiry is limited to whether the challenged pleadings set forth allegations sufficient to make out the elements of a right to relief. *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir.1983), *cert. denied*, 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984); *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983). The complaint should not be dismissed unless it appears without doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41,

45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Lee v. Western Reserve Psychiatric Habilitation Ctr.*, 747 F.2d 1062, 1065 (6th Cir.1984).

■ The Federal Rules of Civil Procedure have consistently been construed to provide liberal parameters in pleading. *See Conley v. Gibson*, 355 U.S. 41, 47–48, 78 S.Ct. 99, 102–03, 2 L.Ed.2d 80 (1957). It is enough that a party provide facts sufficient to give adequate notice to the opposing party and the court of the basis for the action. However, mere conclusory allegations couched in factual allegations are not sufficient to state a cause of action, particularly in complex litigation such as alleged violations of the Sherman Act. *Spanish Int'l Communications Corp. v. Liebowitz*, 608 F.Supp. 178, 184 (S.D.Fla.1985), *aff'd*, 778 F.2d 791 (11th Cir.1985); *Garshman v. Universal Resources Holding, Inc.*, 625 F.Supp. 737, 741 (D.N.J.1986).

## ANALYSIS

■ Counts IV and V of plaintiff's first amended complaint allege violations of the Sherman Anti–Trust Act, 15 U.S.C. § 2. Specifically, plaintiff alleges that defendant has attempted to monopolize the relevant market and submarket for disposable drink cups by asserting its trade dress rights to its PREFERENCE cup against potential competitors. To establish a *prima facie* case of attempted monopolization under section 2 of the Sherman Anti–Trust Act, one must show that there was a specific intent to monopolize as well as a dangerous probability of success. *White & White, Inc. v. American Hosp. Supply Corp.*, 723 F.2d 495, 506–07 (6th Cir.1983); *Richter Concrete Corp. v. Hilltop Concrete Corp.*, 691 F.2d 818, 823 (6th Cir.1982).

■ In the instant action plaintiff has provided little support in its amended complaint to support its conclusory allegations that defendant has violated the Sherman Anti–Trust Act. The only behavior indicated by plaintiff to be violative of the antitrust laws is defendant's assertion of its protected trade dress rights in its PREFERENCE cup. While such factual

allegations alone may be sufficient to survive a motion to dismiss, in the present action they are not because the offending behavior constitutes protected first amendment activity, which is immune from antitrust attack under the *Noerr–Pennington* doctrine. *United Mine Workers v. Pennington,* 381 U.S. 657, 661–62, 85 S.Ct. 1585, 1588–89, 14 L.Ed.2d 626 (1972); *Eastern R.R. President's Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 138–39, 81 S.Ct. 523, 530–31, 5 L.Ed.2d 464 (1972).

In *Noerr* and *Pennington,* the Supreme Court held that attempts to influence the legislative process, even if prompted by an anticompetitive animus, are protected first amendment activity and thus free from antitrust liability. The first amendment provides that:

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; of abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, *and to petition the Government for a redress of grievances.*

(emphasis added). In recognition of this constitutional right to petition, courts have been reluctant to condemn behavior that arguably falls within its protection. As the Supreme Court stated in *Noerr,* "[t]he right to petition is one of the freedoms protected by the Bill of Rights, and we cannot, of course, lightly impute to Congress an intent to invade these freedoms." 365 U.S. at 138, 81 S.Ct. at 530.

In *Noerr,* a group of truckers alleged that the defendant railroads had conducted a publicity campaign against the truckers designed to foster the adoption of laws destructive to the trucking business. The Supreme Court held that such activity was protected by the first amendment right to petition despite its anticompetitive motive. In its opinion the Court stated

It is neither unusual nor illegal for people to seek action on laws in the hope that they may bring about an advantage to themselves and a disadvantage to their competitors. This Court has expressly recognized this fact in its opinion in *United States v. Rock Royal Co-op.,*

[307 U.S. 533, 550, 59 S.Ct. 993, 1002, 83 L.Ed. 1446 (1939) ] where it was said: "If ulterior motives of corporate aggrandizement stimulated their activities, their efforts were not thereby rendered unlawful. If the Act and Order are otherwise valid, the fact that their effect would be to give cooperatives a monopoly of the market would not violate the Sherman Act...."

*Noerr,* 365 U.S. at 139, 81 S.Ct. at 530 (footnote omitted).

■ Once the *Noerr–Pennington* doctrine is implicated, a party can avoid its application by successfully pleading the "sham" exception. The "sham" exception to the *Noerr–Pennington* doctrine was first alluded to in *Noerr,* wherein the Supreme Court recognized that certain activity, while in the guise of protected first amendment activity, may be merely a "sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor," thereby justifying the application of the Sherman Act. 365 U.S. at 144, 81 S.Ct. at 533. Such unethical conduct or the pursuit of "a pattern of baseless, repeated claims" is not protected by the *Noerr–Pennington* doctrine from antitrust action. *California Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508, 512–13, 92 S.Ct. 609, 612–13, 30 L.Ed.2d 642 (1972).

When pleading the sham exception to the *Noerr–Pennington* doctrine, courts have required more specific allegations are required. *Franchise Realty v. San Francisco Local Joint Executive Bd.,* 542 F.2d 1076, 1082–83 (9th Cir.1976), *cert. denied,* 430 U.S. 940, 97 S.Ct. 1571, 51 L.Ed.2d 787 (1977); *Spanish Int'l,* 608 F.Supp. at 183; *Bethlehem Plaza v. Campbell,* 403 F.Supp. 966, 970–71 (E.D.Pa.1975). The courts have recognized such a need because the mere pendency of such actions may chill the exercise of first amendment rights. *Franchise Realty,* 542 F.2d at 1083. This is particularly true when the pending action involves antitrust violations because such actions involve long, drawn out discovery processes and great expense. As

the court acknowledged in *Franchise Realty:*

> The liberal discovery rules of the Federal Rules of Civil Procedure offer opportunities for harassment, abuse, and vexatious imposition of expense that can make the mere pendency of a complex lawsuit so burdensome to defendants as to force them to buy their peace regardless of the merits of the case.

*Id.* It is clear to see why one might be reluctant to assert its first amendment rights if to do so would result in the commencement of vexatious litigation. In order to avoid this chilling effect on first amendment activity, the courts have required greater specificity in pleading where the case implicates conduct which is *prima facie* protected by the first amendment.

■ Defendant's assertion of its trade dress rights in the present action is protected first amendment activity. It is therefore immune from antitrust liability by the *Noerr–Pennington* doctrine. Plaintiff could have avoided the immunity provided by this doctrine if it had successfully implicated the "sham" exception. Plaintiff has, however, failed to plead with the required specificity that defendant's activities were a mere sham. The defendant's mere threat to sue is not enough to bring this case within the "sham" exception.

Defendant has successfully pursued several trade dress infringement actions in the past, most recently in *Fort Howard Cup Corp. v. Sherri Cup, Inc.*, No. 89–C–129 (E.D.Wis. Oct. 6, 1989). This exemplifies the fact that its actions are more than a mere sham. Nor is there anything to indicate that defendant's actions are anything more than attempt to protect its legitimate business interests and the good will attributable to its PREFERENCE cup. This is the precise purpose of the Lanham Act and other trade dress infringement legislation. In *Consortium, Inc. v. Knoxville Int'l Energy Exposition*, 563 F.Supp. 56 (E.D.Tenn. 1983), the court dismissed a complaint which, like the present complaint, alleged violations of the Sherman Act due to defendants' threats to sue for trademark infringement. The court stated "such a theory of antitrust illegality must necessarily fail if the trademark and unfair competition laws are to be effectively enforced." *Id.* at 60. Ruling that trade dress protection actions amount to antitrust violations would set a dangerous precedent resulting in protracted litigation and serious chilling effects on the exercise of protected first amendment rights. Counts IV and V of plaintiff's amended complaint must therefore be dismissed.

■ In count III of the amended complaint, plaintiff alleges unfair competition by defendant. The alleged offending behavior is the same as that complained of in plaintiff's antitrust claims, *i.e.*, that defendant is attempting to bar plaintiff from entry into the disposable drink cup market by threatening to assert its rights to the PREFERENCE trade dress. It follows that the reasoning and grounds requiring dismissal of those claims are applicable to the claim of unfair competition. Further, defendant's behavior is not the sort intended to embody a claim for unfair competition. In *Marion Lab., Inc. v. Michigan Pharmacal Corp.*, 338 F.Supp. 762, 767 (E.D.Mich.1972), the court summarized Michigan's unfair competition law as follows:

> Unfair competition ordinarily consists in the simulation by one person, for the purpose of deceiving the public, of the name, symbols, or devices employed by a business rival, or the substitution of the goods or wares of one person for those of another, thus falsely inducing the purchase of his wares and thereby obtaining for himself the benefits properly belonging to his competitor.

(Citations omitted). Few, if any, cases exist wherein a claim of unfair competition involved something other than the protection of names of corporations, buildings and other businesses.

■ Furthermore, behavior by a business or entity intended to bolster its own business at the expense of a competitor is not *per se* unfair. Such behavior is in fact the very nature of competition. Predatory practices and attempts to defeat a competitor are actionable only if exercised through monopoly power or in an attempt to tortiously interfere with another's business.

Plaintiff has not pleaded tortious interference, nor would such an allegation survive because the alleged interference with the business relationship must be improper in addition to being intentional.

Improper has been defined as illegal, unethical or fraudulent. *Formall v. Community Nat'l Bank*, 166 Mich.App. 772, 779, 421 N.W.2d 289 (1988). An act is not improper if it is motivated by legitimate business reasons. *Michigan Podiatric Medical Ass'n v. National Foot Care Program*, 175 Mich.App. 723, 736, 438 N.W.2d 349 (1989). Defendant's assertion of its trade dress rights is not improper and was motivated by a legitimate business purpose. In *Leopold v. Henry I. Siegel Co.*, 2 U.S.P.Q.2d 1715, 1717, 1987 WL 5373 (S.D.N.Y.1986), the court specifically held that it is not improper to advise a competitor or customers that the competitor's trade dress infringes on its own, regardless of whether or not the assertion is found to be correct. The court stated

> A trademark owner is entitled to advise others of his trademark rights, to warn others that they or others are or may be infringing his rights, to inform others that he is seeking to enforce his rights though legal proceedings, and to threaten accused infringers and their customers with suit.

*Leopold*, 2 U.S.P.Q.2d at 1717, 1987 WL 5373.

Thus, it is clear that plaintiff has failed to state a cause of action for unfair competition, and count III of the amended complaint shall be dismissed.

## ORDER

For the foregoing reasons IT IS HEREBY ORDERED that defendant's motion to dismiss counts III, IV and V of plaintiff's amended complaint is GRANTED; and those counts are dismissed with prejudice.