Martha ROBI, Plaintiff-Appellee,

v.

FIVE PLATTERS, INC., Jean Bennett, and Buck Ram, Defendants-Appellants.

No. 89–55433.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 1, 1990.

Decided Nov. 14, 1990.

Cheri S. O'Laverty and Richard A. Rosen, Los Angeles, Cal., for defendants-appellants.

Allen Hyman, Nagler & Schneider, Beverly Hills, Cal., for plaintiff-appellee.

Before PREGERSON, REINHARDT and HALL, Circuit Judges.

## OPINION

PREGERSON, Circuit Judge:

Paul Robi,[1] former member of the successful musical group "The Platters," brought this action against Buck Ram, the group's former manager, Ram's corporation, "Five Platters, Inc." (hereinafter, "FPI"), and FPI President Jean Bennett. Robi sought declaratory relief, cancellation of FPI's "Platters" trademark registration, damages for intentional interference with contractual relations and prospective economic advantage, and injunctive relief.

This is the second time this case has come before us on appeal. The first appeal arose after the district court granted a preliminary injunction preventing FPI from conducting vexatious litigation or interfering with Paul Robi's use of "The Platters" name. In granting the injunction, United States District Judge Consuelo Marshall gave claim preclusive *res judicata* effect to a prior action brought by FPI against Robi in a California Superior Court regarding its rights to "The Platters" trademark. After trial in that prior state action (hereinafter, "the 1974 Decision"), Superior Court Judge William Levit made specific findings and entered judgment for Paul Robi.[2]

On the first appeal, we upheld the district court's preliminary injunction and held that the 1974 Decision generated both claim preclusion and issue preclusion against FPI which prevented FPI from further challenging Paul Robi's use of the name "The Platters." *See Robi v. Five Platters, Inc.*, 838 F.2d 318 (9th Cir.1988).[3]

After we affirmed the preliminary injunction, the action continued in the district court. Prior to trial, the district court granted Robi's motion for summary adjudication of issues pursuant to Fed.R.Civ.P. 56(c) and 56(d) and adopted the findings set forth in the 1974 Decision. After a 20–day bench trial, the district court entered judgment for Paul Robi on all causes of action, set forth numerous findings of fact and conclusions of law, which included the 1974 Decision's findings, and ordered FPI to pay Robi $1,510,000 in compensatory damages and $2,000,000 in punitive damages.

The district court later amended the judgment twice: first, to cancel FPI's trademark, "The Platters," and enter a permanent injunction prohibiting FPI from challenging Paul Robi's right to use "The Platters" name; and later, to clarify that all *three* of FPI's registered "Platters" marks were to be canceled.

FPI appeals both the judgment as amended and the summary adjudication of issues. We affirm the grant of summary adjudication, the damage awards, and the cancellation of all the "Platters" trademarks.

## I. SUMMARY ADJUDICATION OF ISSUES

▮▮ Whether *res judicata* or collateral estoppel operates to bar claims is a mixed question of law and fact which this court reviews de novo. *Springs v. First National Bank of Cut Bank*, 835 F.2d 1293, 1295 (9th Cir.1988). A summary judgment motion brought pursuant to Fed. R.Civ.P. 56(c) is a proper way to establish claim preclusion and issue preclusion. *See Takahashi v. Board of Trustees of Livingston Union School District*, 783 F.2d 848,

---

1. Upon Paul Robi's death pending this appeal, the parties substituted Martha Robi, Paul Robi's wife and the assignee of his rights in the name and good will of The Platters, as Plaintiff by stipulation pursuant to Fed.R.Civ.P. 25(a).

2. Among Judge Levit's important findings are the following:
   a) That an unequal bargaining position existed between Ram and the group members, and that the new corporation was a sham used by Ram to obtain "The Platters" name.
   b) That the FPI stock was issued to the group members illegally, that the members received

nothing for their interest in "The Platters" name, and that Robi's transfer to FPI of his rights in the name was never effectuated.
   c) That the group later sponsored by FPI did not include any of the artists who made the name "The Platters" famous, and that FPI had intentionally misled the public into believing that its group was the original Platters.
   d) That FPI was guilty of laches, came into equity with unclean hands, and was not entitled to injunctive relief.

3. That decision, which included other cases consolidated on appeal, describes the background of this case more fully.

849 (9th Cir.1986), *cert. denied* 476 U.S. 1182, 106 S.Ct. 2916, 91 L.Ed.2d 545 (1986). Issue preclusion precludes relitigation of all issues actually litigated and necessarily decided in prior proceedings. *Robi*, 838 F.2d at 322.

In the prior appeal in this case, we determined that the 1974 Decision generated issue preclusion against FPI. *Robi*, 838 F.2d at 327. Our prior ruling also rejected FPI's argument, made again here, that the issue of "The Platters" trademark was not raised in the 1974 Decision. Specifically, we found that FPI entered its registration of the mark into evidence in that action and advanced various legal theories to support its claim to the group name. *Id.* at 323. Thus, the district court did not err in adopting the 1974 Decision's findings—which under the doctrine of issue preclusion are deemed conclusive in subsequent actions—in its summary adjudication of issues.

## II. DAMAGES FOR INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

### A. *Compensatory damages*

■ The district court's findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous. Fed.R.Civ.P. 52(a); *Rozay's Transfer v. Local Freight Drivers, Local 208*, 850 F.2d 1321, 1326 (9th Cir.1988) *cert. denied*, 490 U.S. 1030, 109 S.Ct. 1768, 104 L.Ed.2d 203 (1989). Particular deference must be paid to the district court's credibility findings. *Id.* 109 S.Ct. at 1327, citing *Anderson v. City of Bessemer City*, 470 U.S. 564, 579–80, 105 S.Ct. 1504, 1514, 84 L.Ed.2d 518 (1985). The district court's computation of damages, which is a finding of fact, will not be set aside unless clearly erroneous. *Galindo v. Stoody Co.*, 793 F.2d 1502, 1516 (9th Cir.1986).

■ To establish a claim of intentional interference with contractual relations under California law, Paul Robi had to show (1) that he had valid and existing contracts; (2) that FPI had knowledge of his contracts and intended to induce their breach; (3) that the contract was in fact breached; (4) that the breach was caused by FPI's wrongful conduct; and (5) that Robi suffered damage.[4] *See Olivet v. Frischling*, 104 Cal.App.3d 831, 837, 164 Cal.Rptr. 87, 89–90 (1980).

■ Ample evidence existed to support the district court's findings that FPI defendants damaged Paul Robi's business and professional reputation, including:

1) Over 50 letters and telegrams written by parties associated with FPI to numerous trade magazines, booking agents, promoters, and performance venues claiming that Robi had no right to perform as The Platters and threatening to sue anyone who hired or promoted Robi. The evidence included correspondence sent by FPI after the district court entered its preliminary injunction enjoining such activity.

2) Testimony of three music producers who stated that FPI representatives told them that Robi's group was phony and had no rights to the name "The Platters;" that the representatives threatened to put Robi out of business and threatened them with litigation; and that but for FPI's actions, they would have hired and promoted Robi in more frequent and lucrative bookings.

3) Testimony of Paul and Martha Robi regarding the income and business opportunities lost as a result of FPI's interference.

While some of the Robis' testimony may have been conflicting, we defer to the trial court's findings regarding the credibility of the various witnesses. *See Rozay's Transfer*, 850 F.2d at 1327. Although Paul Robi did not present his own business records,[5] he did present ample written evidence of FPI's harassing behavior, which the court determined was intended to and did discourage parties from hiring or promoting him.

---

**4.** Robi must establish the same five elements to sustain a claim of intentional interference with prospective economic relations, except that an economic or business relationship with "the probability of economic benefit" must be established in lieu of a specific contract. *See Bucka-*loo *v. Johnson*, 14 Cal.3d 815, 827, 122 Cal.Rptr. 745, 752, 537 P.2d 865, 872 (1975).

**5.** Robi claimed that his business records had been lost.

In calculating the compensatory damage award, the district court assumed that, but for interference from FPI, Paul Robi's group would have grossed at least as much, if not more than, FPI's group. The court then took the most conservative difference between the two groups' gross earnings for the period in question and applied Paul Robi's lowest profit rate, as established by the testimony of several witnesses.

It is well-established under California law that while the *fact* of damages must be clearly shown, the *amount* need not be proved with the same degree of certainty, so long as the court makes a reasonable approximation. *See, e.g., Hutcherson v. Alexander,* 264 Cal.App.2d 126, 135, 70 Cal.Rptr. 366, 372 (1968); *Johnson v. Cayman Dev. Co.,* 108 Cal. App.3d 977, 983, 167 Cal.Rptr. 29, 32 (1980); 6 Witkin, *Summary of California Law,* § 1325 at 782 (9th ed.1988). Under the Restatement (2d) of Torts, once an injured person proves that his business would have been profitable, he need not prove precisely "the amount of the profits he would have made or the amount of harm that the defendant has caused"; rather, he need only "present such evidence as might reasonably be expected to be available under the circumstances." Rest.2d of Torts, § 912(d) at 482.

The seminal California case regarding uncertainty as to the amount of damages in a tort action is *Hutcherson v. Alexander,* 264 Cal.App.2d 126, 70 Cal.Rptr. 366. *Hutcherson* involved a dispute between neighboring business owners over a large sign erected by one owner which blocked the other establishment from the public's view. The trial court concluded that although it was clear that the plaintiff owners had suffered business losses, the evidence regarding the amount of the damages was insufficient, because the business had only recently been established. Rather than attempt to estimate the plaintiffs' damages, the trial court retained jurisdiction over the matter in order to fix plaintiffs' damages at a later date.

On appeal, the California Court of Appeals ruled that the trial court erred in refusing to estimate damages at the close of trial. The appellate court held that because the trial court had determined that the defendant's conduct in fact damaged the plaintiffs, and because the evidence was speculative only in the sense that the court "could not calculate the damages with certainty," the court "should have nevertheless resorted to the best evidence available and fixed damages accordingly." *Id.* at 135, 70 Cal.Rptr. 366.

In the present case, the district court attempted to do just that. After Paul Robi established the fact of damages through testimony by several witnesses that his business would have been profitable, the district court made a reasonable approximation of the amount of Robi's damages. The court calculated approximate damages by taking the most conservative difference between the FPI group's gross earnings and Robi's gross earnings for the period in question, and then multiplying that amount by Paul Robi's lowest established profit rate. We cannot say that this method of approximating the damage amount was clearly erroneous.

### B. *Punitive damages*

Paul Robi presented evidence at trial which adequately supported the district court's finding of malice and ill-will toward Robi, and which justified an award of punitive damages. The evidence included (a) testimony by two music producers that former manager Buck Ram and FPI President Jean Bennett threatened to put Robi out of business; (b) a twenty-year correspondence campaign by FPI management which painted Robi as a trademark infringer and threatened parties hiring or promoting Robi with litigation; and (c) FPI defendants' knowing violation of the district court's preliminary injunction by sending the type of letters specifically forbidden by the court.

### III. CANCELLATION OF FIVE PLATTERS, INC.'S TRADEMARKS

#### A. *Cancellation of "The Platters" mark*

The district court found that FPI filed a false incontestability affidavit pur-

suant to 15 U.S.C. § 1065,[6] submitted a false and misleading trademark application exemplar, and had attempted to mislead the public. The court determined that the fraudulent practices provided a basis for canceling FPI's trademark, "The Platters."

A party may seek cancellation of a registered trademark on the basis of fraud under 15 U.S.C. § 1064(c) by proving a false representation regarding a material fact, the registrant's knowledge or belief that the representation is false, the intent to induce reliance upon the misrepresentation and reasonable reliance thereon, and damages proximately resulting from the reliance. *San Juan Products, Inc. v. San Juan Pools of Kansas, Inc.*, 849 F.2d 468, 473 (10th Cir.1988).

Any false statements made in an incontestability affidavit may jeopardize not only the incontestability claim, but also the underlying registration. *See Crown Wallcovering Corp. v. Wallpapers Manufacturers Limited*, 188 U.S.P.Q. 141, 143–44 (1975); *Duffy–Mott Co., Inc. v. Cumberland Packing Co.*, 424 F.2d 1095, 57 CCPA 1046 (1970). In particular, filing a fraudulent incontestability affidavit provides a basis for canceling the registration itself. *Crown Wallcovering*, 188 U.S.P.Q. at 144.

Although the burden of proving that a party fraudulently procured a trademark registration is heavy, *Beer Nuts, Inc. v. Clover Club Foods Co.*, 711 F.2d 934, 942 (10th Cir.1983), this court reviews a district court's factual conclusions in trademark registration cases under the "clearly erroneous" standard. *See Wells Fargo & Co. v. Stagecoach Properties, Inc.*, 685 F.2d 302, 306 (9th Cir.1982).

FPI President Jean Bennett submitted an incontestability affidavit to the United States Patent and Trademark Office stating that "there has been no final decision adverse to Registrant's claim of ownership of said mark nor to its right to register the same or maintain it on the register." Given the adverse 1974 Decision, which denied FPI's claim that it was the only entity entitled to use the name "The Platters" and contained numerous findings adverse to FPI's ownership interest, the affidavit was, as the district court properly concluded, clearly false. *See, e.g., Rosco and Mastracco, Inc. v. Giant Food Inc.*, 720 F.2d 1263, 1266 (Fed.Cir.1983) (senior user makes false oath in trademark registration application where he fails to acknowledge conflicting rights of junior user which are clearly established by court decree); *Skippy, Inc. v. CPC Int'l, Inc.*, 674 F.2d 209, 216 (4th Cir.1982), *cert. denied*, 459 U.S. 969, 103 S.Ct. 298, 74 L.Ed.2d 280 (1982) (incontestability affidavit stating there had been no final decision adverse to affiant's registration rights was false where a final decision against registration had been made 21 years earlier). Moreover, given Bennett's admitted knowledge of that decision at the time she signed the affidavit, the district court did not err in concluding that the affidavit was not only false, but also fraudulent.

The district court also found that FPI filed a misleading exemplar with its original application; that FPI made no attempt to change the way its group presented itself despite the 1974 Decision finding that it had intentionally misled the public; and that FPI group members purposely misrepresented themselves as the original Platters in their performances. Thus, there is ample support for the district court's cancellation of FPI's "Platters" trademark on the basis of fraud.

## B. The Corrected Judgment Under *Fed.R.Civ.P. 60(a)*

In the amended judgment from which FPI appeals, the district court ordered, among other things, that FPI's trademark "The Platters" be canceled. However, the court failed to identify the particular trademark to be canceled or to include any trademark registration numbers or dates of issuance. As a result, the Trademark Office was unable to cancel the trademark.

6. Under 15 U.S.C. § 1065, an applicant may establish an incontestable right to use a mark by averring, *among other things*, that "there has been no final decision adverse to registrant's claim of ownership" or right to register the mark.

The Trademark Office indicated that three registrations had been issued to FPI: one for "The Platters" trademark issued in 1986; one for "The Platters" service mark issued in 1973; and one for "The Buck Ram Platters" service mark issued in 1987. The Office sought clarification as to which trademarks should be canceled.

To clarify the judgment, appellee Martha Robi requested and was granted by this court leave to file a motion before the district court to correct clerical error pursuant to Fed.R.Civ.P. 60(a)[7]. In her motion, Martha Robi asked the district court to correct the judgment by specifying that all three of FPI's trade or service marks, identified by number, should be canceled. The court granted the motion and amended the judgment, ordering cancellation of all three FPI marks. FPI contends that the district court erred in granting the 60(a) motion, and that FPI has the right to use the "Buck Ram Platters" mark because it contains Buck Ram's own name. We reject both of FPI's contentions.

■ We review the district court's granting of a Rule 60(a) motion for abuse of discretion. *Blanton v. Anzalone*, 813 F.2d 1574, 1577 (9th Cir.1987). A district court judge may properly invoke Rule 60(a) to make a judgment reflect the actual intentions and necessary implications of the court's decision. *Id., citing Jones & Guerrero Co. v. Sealift Pacific*, 650 F.2d 1072, 1074 (9th Cir.1981). In reviewing the corrected judgment, we must afford the court wide latitude and focus on what the court originally intended to do. *Id.*

Although the district court did not explain in this case why it amended the judgment to include all three marks, *see In re Jee*, 799 F.2d 532, 535 (9th Cir.1986), *cert. denied* 481 U.S. 1015, 107 S.Ct. 1892, 95 L.Ed.2d 499 (1987), there is no evidence that the court ever intended to exclude any of FPI's marks from the original judgment. In fact, while exhibits bearing "The Buck Ram Platters" mark were introduced at

trial, there is no indication that the district court distinguished that mark from the other "Platters" marks in any way.

We therefore conclude that the district court intended in its original judgment to cancel any and all trade and service marks held by FPI which included "The Platters" name, and that the court amended the judgment only to the extent necessary to clarify that intention.

■ We also find FPI's argument that canceling "The Buck Ram Platters" mark was improper due to the special nature of trademarks that contain an individual's name unpersuasive, for two reasons. First, courts do not hesitate to forbid an individual from using his own name in connection with a business when he has deliberately attempted to confuse the public. *See Friend v. H.A. Friend & Co., Inc.*, 416 F.2d 526, 531 (9th Cir.1969), *cert. denied* 397 U.S. 914, 90 S.Ct. 916, 25 L.Ed.2d 94 (1969). Here, as in *Friend*, where evidence suggests the trademark user "has deliberately, vigorously, and successfully confused purchasers," courts may properly issue injunctions to prohibit or restrict the use of an individual's name. *Id.*

Second, cases dealing with a person's right to use his name in business focus on the use of the individual's *own name.* *See, e.g., Friend*, 416 F.2d at 526; *Sardi's Restaurant Corp. v. Sardie*, 755 F.2d 719 (9th Cir.1985); *Taylor Wine Co. v. Bully Hill Vineyards, Inc.*, 569 F.2d 731 (2d Cir.1978). Here, the district court canceled "The Buck Ram Platters" mark not because Buck Ram's own name was confusing or misleading, but because it included the term "The Platters." Presumably, FPI would be free to apply for a new mark which featured Buck Ram's name if it chose to do so.

Thus, it was not an abuse of discretion for the district court to clarify its original intention to cancel all marks held by FPI featuring the term "The Platters" by

---

7. Rule 60(a) provides in part:
   Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time on its own initiative or on the motion of any party and after such notice, if any, as the court orders.

**1446**

amending the judgment pursuant to Rule 60(a).

AFFIRMED.