**eCASH TECHNOLOGIES, INC., Plaintiff & Counterdefendant,**

**v.**

**Mark GUAGLIARDO dba eCash.Com, Netconcept Interactive, Netconcept, Netconcept Inc., Defendants Counterclaimants.**

**No. CV 00–03292 ABC.**

United States District Court, C.D. California.

March 29, 2000.

Roger R. Myers, Lisa M. Sitkin, Steinhart & Falconer, San Francisco, CA, for plaintiffs.

James B Hicks, Heather L. McCloskey, Ervin Cohen & Jessup, Beverly Hills, CA, for defendants.

Roger R Myers, Lisa M Sitkin, Steinhart & Falconer, San Francisco, CA, for ECash Technologies Inc, counter-defendant.

ORDER RE: PLAINTIFF'S MOTION TO DISMISS PURSUANT TO FED. R.CIV.P. 12(B)(6); MOTION TO STRIKE PURSUANT TO CAL.CIV. PRO.CODE § 425.16; ATTORNEYS' FEES PURSUANT TO CAL.CIV. PRO.CODE § 425.16

COLLINS, District Judge.

This case involves a dispute over rights to a trademark, and/or an associated domain name. Plaintiff has filed a Motion to Dismiss and Motion to Strike Defendants' counterclaims for cancellation of Plaintiff's registered trademark, trade libel, slander of title, unfair/unlawful business practices, and unfair competition. Pursuant to the Motion to Strike, Plaintiff also seeks attorneys' fees as well as costs incurred in defending against the state law counterclaims. For the reasons that will be indicated below, the Court hereby GRANTS Plaintiff's Motion to Dismiss Defendants' federal claim for trademark cancellation. The Court DISMISSES Defendants' state law claims. In addition, the Court finds that Plaintiff is a "prevailing party."

## I. PROCEDURAL HISTORY

Plaintiff and Counter–Defendant eCASH TECHNOLOGIES ("Plaintiff") filed the initial Complaint in this matter on March 29, 2000, naming as Defendants MARK GUAGLIARDO dba ECASH. COM, NETCONCEPT INTERACTIVE, NETCONCEPT, and NETCONCEPT INC. (collectively, "Defendants"). The

Complaint alleged federal claims of cyber-piracy (15 U.S.C. § 1125(d)), trademark infringement (15 U.S.C. § 1114), false designation of origin (15 U.S.C. § 1125(a)), and trademark dilution (15 U.S.C. § 1125(c)), and state law claims of trade name infringement (Cal.Bus. & Prof.Code § 14415), common law trademark infringement, dilution (Cal.Bus. & Prof.Code § 14330), and unfair competition (Cal.Bus. & Prof.Code § 17200 *et seq.*). These claims are premised on Defendants' registration of the "ecash.com" domain name, in alleged violation of intellectual property rights owned by Plaintiff. *See* Complaint ¶¶ 10–60.

After answering the Complaint on May 8, 2000, Defendants filed an Amended Answer and a Counterclaim on May 30, 2000. The Counterclaim sought cancellation of Plaintiff's registration of the "eCash" mark on the basis of fraudulent registration, and/or a declaratory judgment of non-infringement by Defendants as well as invalidity/unenforceability of Plaintiff's mark. *See* Counterclaim ¶¶ 1–19. The Counterclaim also alleged unfair and/or unlawful business practices by Plaintiff under state law (Cal.Bus. & Prof.Code § 17200). *See id.* ¶¶ 20–25.

On June 22, 2000, Plaintiff filed a Motion to Dismiss Defendants' cancellation counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6), and a Motion to Strike the state law counterclaims pursuant to California Code of Civil Procedure § 425.16. *See* Motion to Dismiss and Motion to Strike filed June 22, 2000 ("MTD 1"). Defendants filed an Opposition to the Motion on July 3, 2000.

Before any hearing was conducted on Plaintiff's first Motion, Defendants filed a First Amended Counterclaim on July 3, 2000. The allegations therein mirror those in the first Counterclaim, in that again Defendants seek cancellation of Plaintiff's registered "eCash" mark, and a declaratory judgment of non-infringement/invalidity. In addition to the original state law claims of unfair/unlawful business practices, Defendants' First Amended Counterclaim also alleges state law claims of trade libel, slander of title, and unfair competition. *See* First Amended Counterclaim ¶¶ 7–39.

On July 26, 2000, Plaintiff filed the instant Motion to Dismiss the First Amended Counterclaim pursuant to Rule 12(b)(6) and to Strike the amended state law counterclaims pursuant to California Code of Civil Procedure § 425.16 (the "Motion," or "MTD II"), noticed for a hearing on August 21, 2000. On August 7, 2000, Defendants filed an Opposition, and Plaintiff filed a Reply on August 14, 2000.

By order of the Court, the hearing on the Motion was continued from August 21, 2000 to October 2, 2000. Apparently taking this as a cue that additional briefing was appropriate, Defendants then filed an "Amended Opposition" on September 18, 2000. Defendants sought therein to voluntarily dismiss without prejudice claims in the First Amended Counterclaim "based on statements made in eCash's May 31 letter." Amended Opposition at 1.[1] Defendants also used the chance to reargue the validity of the claim for trademark cancellation. *See id.* at 2–4.

Finding the submission of an "Amended Opposition" improper, on September 25, 2000 the Court issued a Minute Order giving Plaintiff a chance to respond to

---

**1.** Though the Amended Opposition is not clear on this point, the Court believes that Defendants intended by this statement to dismiss the state law counterclaims for trade libel and slander of title, but to leave standing the federal claim for cancellation of trademark, as well as the state law claims for unfair/unlawful business practices, and unfair competition. *See* Amended Opposition at 1–2.

the allegations therein.[2] The Court also stated that it would not consider the arguments in the "Amended Opposition" regarding the continuing viability of Defendants' counterclaim for cancellation of Plaintiff's registered trademark. On September 26, 2000, apparently before having received the Minute Order,[3] Plaintiff filed an "Objection to Filing of Amended Opposition" ("Objection") arguing that Defendants should not be permitted to simply dismiss their state law counterclaims without prejudice. Plaintiff asserts that as the clearly "prevailing party" it is entitled to an award of attorneys' fees under Section 425.16(c).[4] *See* Objection at 3–4.

Finally, on October 4, 2000, Defendants filed a Request for Leave to file an Amended Opposition, accompanied by another copy of the same Amended Opposition previously filed. The Court declines to consider Defendants' additional argument on the continuing viability of the federal counterclaim; the Court will consider only Defendants' request to voluntarily dismiss the state counterclaims, opposed by Plaintiff's Objection. On the counterclaim for trademark cancellation, the Court confines its analysis to the original Motion, Opposition, and Reply.[5]

## II. STANDARDS FOR MOTION TO DISMISS AND MOTION TO STRIKE

### A. *Standard for a Motion to Dismiss Pursuant to Rule 12(b)(6)*

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. *See* Fed.R.Civ.P. 12(b)(6).

Rule 12(b)(6) must be read in conjunction with Rule 8(a) which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990). "The Rule 8 standard contains 'a powerful presumption against rejecting pleadings for failure to state a claim.'" *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir.1997). A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988); *accord Gilligan*, 108 F.3d at 249 ("A complaint should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief'").

The Court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. *See Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir.1998). Moreover, the complaint must be read in the light most favorable to the plaintiff. *See id.* However, the Court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations. *See, e.g., Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.1981). Moreover, in ruling on a 12(b)(6) motion, a court generally cannot consider material outside of the complaint (*e.g.*, facts presented in briefs, affidavits, or discovery

**2.** The hearing was also further continued to October 30, 2000.

**3.** The Court will treat the "Objection" as having been filed in response to the Court's Minute Order, and therefore consider it.

**4.** Plaintiff also replied to the re-argument of the claim for trademark cancellation con-

tained in the "Amended Opposition." The Court will also disregard this additional argument.

**5.** Plaintiff filed a Request for Judicial Notice on July 26, 2000. The Court takes judicial notice of Exhibits A–D thereto.

materials). *See Branch v. Tunnell,* 14 F.3d 449, 453 (9th Cir.1994). A court may, however, consider exhibits submitted with the complaint. *See id.* at 453–54. Also, a court may consider documents which are not physically attached to the complaint but "whose contents are alleged in [the] complaint and whose authenticity no party questions." *Id.* at 454. Further, it is proper for the court to consider matters subject to judicial notice pursuant to Federal Rule of Evidence 201. *Mir, M.D. v. Little Co. of Mary Hospital,* 844 F.2d 646, 649 (9th Cir.1988).

### B. Motion to Strike Pursuant to Cal.Civ. Pro.Code § 425.16.

Section 425.16, commonly referred to as the "Anti–SLAPP"[6] law, was enacted in 1993 "in response to the legislature's concern about civil actions aimed at private citizens to deter or punish them for exercising their political or legal rights." *United States ex rel. Newsham v. Lockheed Missiles & Space Company, Inc.,* 190 F.3d 963, 970 (9th Cir.1999) (citing *Wilcox v. Superior Court,* 27 Cal.App.4th 809, 33 Cal.Rptr.2d 446 (1994)). "The hallmark of a SLAPP suit is that it lacks merit, and is brought with the goal[ ] of obtaining an economic advantage over a citizen party by increasing the cost of litigation to the point that the citizen party's case will be weakened or abandoned ..." *Id.*

To combat the perceived threat of lawsuits filed merely to deter the exercise of political or legal rights, Section 425.16 sets up a "special motion to strike," that is akin to a Rule 12(b)(6) motion to dismiss. The Ninth Circuit has determined that the procedure set up by Section 425.16 applies to state law claims filed in federal court. *See id.* at 972–73 (applying § 425.16 to state-law counterclaims).

"In order to prevail, a citizen party must make a prima facie showing that the SLAPP suit arises from any act by the citizen party 'in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue.'" *Id.* at 971. The court makes this determination from the pleadings and supporting or opposing affidavits. Once this prima facie showing is made, the burden then shifts to the plaintiff to establish by a "reasonable probability" that he or she will prevail on the claim and that the defendant's "purported constitutional defenses are not applicable to the case as a matter of law or by a prima facie showing of facts which, if accepted by the trier of fact, would negate such defenses." *See id.* (quoting *Wilcox,* 27 Cal.App.4th at 824–25, 33 Cal.Rptr.2d 446). The prevailing party on a special motion to strike is entitled to his or her attorneys' fees and costs. *See id.* (citing Section 425.16(c)).

### III. FACTUAL ALLEGATIONS[7]

According to the First Amended Counterclaim ("FACC"), Defendants registered

---

6. *SLAPP* denotes "*S* trategic *L* awsuit *A* gainst *P* ublic *P* articipation."

7. As required for a Rule 12(b)(6) motion, the Court accepts as true all material allegations in the First Amended Counterclaim, as well as reasonable inferences to be drawn from them. *See Pareto v. F.D.I.C.,* 139 F.3d 696, 699 (9th Cir.1998). Since the Ninth Circuit has said that a motion to strike pursuant to Cal.Civ. Pro.Code § 425.16 is "akin to a motion to dismiss," this standard will also be applied to the motion to strike. The Court may disre-

gard allegations in the First Amended Counterclaim if they are contradicted by facts established by reference to documents attached as exhibits to the Counterclaim, or upon which it necessarily relies; further, the Court need not accept as true allegations that contradict facts which may be judicially noticed by the Court. *See, e.g., Durning v. First Boston Corp.,* 815 F.2d 1265, 1267 (9th Cir.1987); *Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir.1994); *Mullis v. United States Bankruptcy Court,* 828 F.2d 1385, 1388 (9th Cir.1987).

the domain name "ecash.com" with Network Solutions, Inc. in or about July, 1995. *See* FACC ¶ 9. Defendants assert that their use of the domain name was in conjunction with a proprietary technology for processing commercial transactions on the Internet. *See id.* It is further asserted that since Defendants' registration of the domain name, at least thirty other companies have registered some variant of the name. Plaintiff is purported to have been the thirty-first. *See* FACC ¶ 10. According to Defendants, they were contacted by Plaintiff (then known as Digicash) in or about 1996 regarding the domain name. "At that time, Guagliardo refused to release the Ecash name for use by plaintiff eCash." FACC ¶ 11. Apparently, Plaintiff (now known by the name eCash) then registered its own domain name. *See* FACC ¶ 12. Plaintiff's company name change and registration were done "without Guagliardo's permission or consent." FACC ¶ 12.

Defendants acknowledge that Plaintiff "claims" to have submitted an application for registration of the "E–Cash" mark in 1994. *See* FACC ¶ 13. However, Defendants argue that because registration of the mark was not *issued* until August, 1999, Defendants' "use of the name 'Ecash' in commerce predated the issuance of the registration of the 'eCash' name as a trademark by plaintiff ... plaintiff was aware of Guagliardo's use of the 'ecash.com' domain name prior to the issuance of the registration of the 'eCash' trademark in or about August of 1999, which was approximately three years after Guagliardo refused to license or sell the Ecash name to plaintiff eCash, and over five years after Guagliardo had registered the Ecash domain name." FACC ¶ 13.

From this interpretation of the timing Defendants conclude that Plaintiff "there-fore fraudulently registered the 'eCash' name as a federal trademark ... and the trademark registration for 'eCash' was issued to plaintiff eCash based on fraudulent information provided by eCash ... in that plaintiff eCash was aware of Guagliardo's use and registration of the 'ecash.com' domain name prior to plaintiff eCash's registration of the 'eCash' trademark in August of 1999, and yet plaintiff eCash withheld such information from the [Patent & Trademark Office ("PTO")], failing to fulfill its duty to inform the PTO of the clearly established conflicting right of Guagliardo to use the 'eCash' name. Plaintiff eCash's registration of the purported 'eCash' trademark was thus obtained by fraud on the PTO, and it is not a valid or enforceable trademark registration." FACC ¶ 14. On this basis, Defendants argue they are entitled to a declaratory judgment that the "eCash" mark registered by Plaintiff is not valid or enforceable, that Guagliardo's use of the "ecash.com" domain name is non-infringing, and an order canceling Plaintiff's purported registration. *See* FACC ¶ 19.

Defendants' version of events, however, to some degree misstates the facts that are obvious to the Court from the documents attached to or referenced in the Counterclaim, or of which the Court has taken judicial notice in connection with the present Motion. Defendants' focus on the *issue* date of the "E–Cash" mark to Plaintiff overlooks the history of the registration application clearly indicated by the Certificate of Registration and accompanying documentation attached to Plaintiff's initial Complaint, and which is relied on in Defendants' First Amended Counterclaim. That documentation reveals several additional facts. On November 18, 1994, an apparent predecessor in interest to Plain-

---

Neither of these actions necessarily converts the Rule 12(b)(6) motion into a motion for summary judgment. *See, e.g., Branch v. Tunnell*, 14 F.3d at 454.

tiff (David Chaum) submitted the first application for registration of the "E–Cash" mark to the Patent and Trademark Office. *See* Certificate of Registration of the "E–Cash" Mark (Reg. No. 2,271,287) Registered August 24, 1999 and Supporting Notice of Recordation (including filing history), Exhibit A to Complaint filed March 29, 2000 ("E–Cash Registration"); *see also* FACC ¶ 1 (referring to Exhibit A of Complaint); Exhibits B and C to Request for Judicial Notice filed July 26, 2000 ("Filing History"). The filing history of the registration eventually issued August 24, 1999 makes clear that notwithstanding the original applicant, rights to the mark when issued had been assigned first (on October 31, 1997) from David Chaum to Digicash Acquisition Corp. ("Digicash"), and then (on July 13, 1999) from Digicash to the current Plaintiff, eCash. *See* Filing History.

Therefore, to the extent that it may make a difference to the claim of fraudulent registration, it seems clearly established that at least the initial application for registration was filed six months *prior* to Defendants' registration of the domain name. This difference will be discussed further below. *See infra* Part IV.

Defendants allege that through these "fraudulent" actions, and also by "intentionally and maliciously making and causing to enter into interstate commerce false and misleading statements of fact about Guagliardo and his commercial activities (including but not limited to false statements that Guagliardo's use of the 'ecash.com' domain name is supposedly illegal and/or supposedly infringes plaintiff eCash's purported intellectual property rights)," Plaintiff engaged in trade libel, slander of title, unfair/unlawful business practices, and unfair competition. FACC

¶¶ 22–38. These "false and misleading statements" were in a letter sent from Plaintiff to " 'Afternic.com,' a company maintaining an auction website on which domain names are listed for auction," which made "false statements denigrating Guagliardo's title to the 'ecash.com' domain name." FACC ¶¶ 23, 29.

The letter in question was attached as Exhibit A to an Objection filed by Defendants on July 5, 2000 ("7.4.1 Objection").[8] Defendants indicated therein that it had been their intent to include the letter as an attachment to their Opposition to Plaintiff's first Motion to Dismiss. *See* 7.4.1 Objection at 2. In the referenced Opposition, meanwhile, Defendants stated that "[t]he specific statement on which these claims are based appears as an attachment to the [first] amended counterclaim." Opposition filed July 3, 2000 at 4. Therefore, even though apparently the letter was *not* actually attached to the First Amended Counterclaim, the Court will treat it as if it had been, and consider it for this Motion. It was in any case clearly *relied* upon. *See* FACC ¶ 23; *Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir.1994).

The letter at issue is dated May 31, 2000, and is signed by Roger R. Myers of Steinhart & Falconer, Plaintiff's counsel. The letter is addressed to the legal department of Afternic.com in New York. In the letter, Plaintiff's counsel states that the letter is meant "to notify Afternic.com that one of the domain names listed for auction on your company's website is the subject of a pending lawsuit filed by our client." Exhibit A to 7.4.1 Objection. The letter further states that "[a]s the [enclosed] complaint explains, our client owns a registered trademark for ECASH and defendant's use of the domain name 'ecash.com'

---

**8.** Defendants objected to Plaintiff's initial Motion to Dismiss and Motion to Strike filed June 22, 2000 on the basis of failure to strictly comply with Local Rule 7.4.1 (meet and confer rule).

violates our client's rights in that mark under federal cyberpiracy and trademark statutes, among other laws. This is the same domain name that [Defendants are] offering for sale on your company's website for a minimum bid of $2.5 million." *Id.*[9]

## IV. DISCUSSION

Defendants' First Amended Counterclaim argues that Plaintiff's registration of the "eCash" mark was "fraudulent," and that therefore the mark should be found invalid and unenforceable, and that the registration should be canceled. Defendants further argue that the combination of the "fraudulent" registration and the May 31, 2000 letter constitutes trade libel, slander of title, unfair/unlawful business practices, and unfair competition. Defendants seek an order canceling Plaintiff's registration, a declaratory judgment, damages including punitive damages, fees and costs, and restitution.

Plaintiff's Motion argues that Defendants' first counterclaim, that the registration of the trademark was "fraudulent," cannot state a claim and should therefore be dismissed with prejudice under Rule 12(b)(6). Plaintiff argues that it was under no duty to report to the PTO Defendants' registration of the "ecash.com" domain name, because "[a]n applicant for trademark registration has no duty to disclose to the PTO another party's use of the mark in the application or during the period before registration [during the pendency of an application] unless the applicant believes the other party possesses 'clearly established' superior rights in the mark." Motion at 5. Plaintiff argues that Defendants' rights to the "ecash" mark were not "clearly established," both be-

cause the initial application for registration was filed six months *before* Defendants registered their domain name, and because in any case the mere registration of a domain name does not create "clearly established" rights to a mark. *See id.* at 3–5.

Plaintiff also argues that Defendants' state law counterclaims should be dismissed with prejudice because the letter on which they are (primarily) based is absolutely privileged under state law (Cal. Civ.Code § 47(b)). *See id.* at 6–8. Further, Plaintiff argues for dismissal of Defendants' trade libel and/or slander of title claims because Defendants have not and cannot plead the special damages that are required to sufficiently state such claims. *See id.* at 8–9.

Finally, Plaintiff argues . Defendants' state law claims should be stricken pursuant to state law (Cal.Civ.Pro.Code § 425.16) because the counterclaims were filed in derogation of Plaintiff's rights under the First Amendment (a so-called "SLAPP suit"). Plaintiff argues that the state law counterclaims should be stricken, and that Plaintiff is entitled to recover attorneys' fees and costs. *See id.* at 9–10.

In response, Defendants argue that registration of the domain name "ecash.com" *did* create "clearly established" rights to the mark, such that Plaintiff's failure to apprise the PTO of this fact renders the subsequent registration "fraudulent." Alternatively, Defendants argue that whether Defendants' rights were "clearly established" is in any case a question of fact that cannot be determined on a motion to dismiss pursuant to Rule 12(b)(6). *See* Opposition at 1–3.

---

**9.** Though the Court relies on this letter to assess the language used by Plaintiff's counsel, the Court does not rely on it for the truth of the matters asserted (e.g., that Defendants

were offering the "ecash.com" domain name for sale for $2.5 million). This allegation is among the bases for the instant suit filed by Plaintiff.

Defendants initially also argued that the state law counterclaims as amended adequately pled the *content* of the "false and misleading" statements forming their basis, "thereby fulfilling any applicable pleading requirement for claims implicating First Amendment rights." Defendants claimed that the privilege under Section 47(b) did not extend to the statements in the May 31, 2000 letter, nor would these counterclaims be subject to Section 425.16. Finally, Defendants' initial Opposition argued that the counterclaims adequately pled the special damages required for trade libel and slander of title, and if they did not Defendants should be allowed to amend. *See id.* at 3–4.

In the "Amended Opposition," Defendants then stated their desire to "voluntarily dismiss without prejudice Guagliardo's claims based on statements made in eCash's May 31 letter." Amended Opposition at 1. The alleged reason for this sudden change of heart was the fact that "[i]n its reply brief, eCash cited for the first time the case of *Letica Corp. v. Sweetheart Cup Co.*, 790 F.Supp. 702 (E.D.Mich.1992), in support of its argument that its May 31 letter's statements are subject to the litigation privilege." *Id.* Defendants claim this case was neither cited in the Motion, nor brought to their attention at the Rule 7.4.1. meeting. Defendants apparently found this case quite convincing, as they now seek to dismiss these state law claims.

Defendants claim that such a voluntary dismissal of these claims without prejudice

would moot Plaintiff's motion to strike pursuant to Section 425.16, and the request for fees and costs based thereon. *See id.*[10] Defendants assert that they are *not* voluntarily dismissing their claim for cancellation of the trademark, nor their claims for unfair business practices or unfair competition. *See id.* at 1–2. The rest of Defendants' "Amended Opposition" is disregarded by the Court.

In the Objection to the "Amended Opposition," Plaintiff argues that Defendants should not be allowed to voluntarily dismiss the state law claims premised on the May 31, 2000 letter without prejudice, both because this would leave Defendants free to raise these claims at a later time, and because under the motion to strike provided for by Section 425.16, Plaintiff is entitled to recover fees and costs. *See* Objection at 2. Plaintiff argues that whether the motion to strike is granted or Defendants are allowed to voluntarily dismiss the claims, Plaintiff is in any case the "prevailing party." *See id.* at 3–4.

## A. Plaintiff's Motion to Dismiss the Federal Counterclaim

■ Fraud in procurement of a trademark registration may be raised as a ground for cancellation in civil litigation, in which case it may function as a "defense" to a claim of trademark infringement.[11]

■ In general, "affirmative" fraud requires that all the following elements be alleged and proven: (1) a false representation regarding a material fact; (2) knowl-

---

**10.** To the extent that it matters, it is worth noting that despite Defendants' claim to the contrary, the *Letica Corp.* case *was* clearly and prominently cited in Plaintiff's initial Motion. *See* Motion at 7. Defendants cannot therefore claim that it first appeared on Reply.

**11.** Though as McCarthy points out, "It is difficult to understand why defendants in many trademark infringement suits expend so much

time, effort and money in ... pursuing the claim that plaintiff's federal registration was obtained by fraud. It has been held several times that even if defendant succeeds in proving that the plaintiff's registration was fraudulently obtained, plaintiff's common law rights in the mark continue unabated ..." 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 31:60 at 31–109 (2000).

edge or belief that the representation is false ("scienter"); (3) an intention to induce the listener to act or refrain from acting in reliance on the misrepresentation; (4) reliance on the misrepresentation ("reasonable reliance"); and (5) damage proximately resulting from such reliance. *See* J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 31:61 at 31–112 (2000) [hereinafter *McCarthy*]; *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir.1990). Because a charge of fraud in the procurement of a trademark registration is a disfavored defense,[12] the party alleging fraud bears a "heavy" burden of proof. *See Robi*, 918 F.2d at 1444.[13]

"A statement in an application or representation to the PTO may be 'false,' without being 'fraudulent.' Statements of honest, but perhaps incorrect belief or innocently made inaccurate statements of fact do not constitute 'fraud.' Fraud arises only when the party making a false statement of fact knows that the fact is false ..." *McCarthy* § 31:66 at 31–117 and 31–118. Furthermore, the allegedly fraudulent misrepresentation must be "material," in the sense that without it the registration would not have issued. *See McCarthy* § 31:67 at 31–118 (otherwise registration would have been denied).

With these restrictions on the use of fraud allegations to cancel a trademark registration, it is perhaps not surprising that "charges of fraud and non-disclosure [that rely on an applicant's alleged duty to disclose uses of the same mark by others] have uniformly been rejected." *McCarthy* § 31:76 at 31–129 ("litigants continue to pursue [these claims] vigorously, perhaps because of an erroneous view that patent law disclosure standards apply in the trademark context."). In general, an applicant is only required to have a "good faith" belief that it is the senior user. *See McCarthy* § 31:77 at 31–132 (with a good faith belief, "the oath cannot be fraudulent"). "In the absence of a court holding or a concurrent use proceeding, the senior user is entitled to an unrestricted federal registration notwithstanding the existence of junior users who might have common law rights of use in certain parts of the United States." *McCarthy* § 31:77 at 31–132.

Thus, in what is often considered to be the leading case on the issue, the Seventh Circuit held that a registration applicant has no duty to investigate and report to the PTO all other possible users of the same or a similar mark. *See Money Store v. Harriscorp Finance, Inc.*, 689 F.2d 666, 670 (7th Cir.1982). Similarly, the Federal Circuit has indicated that ordinarily a senior user need not identify junior users in the oath underlying an application for registration. Only in the rare circumstance that another user of the same mark's rights are "clearly established" must this use be disclosed. *See Rosso & Mastracco. Inc. v. Giant Food, Inc.*, 720 F.2d 1263, 1266 (Fed.Cir.1983). In *Rosso*, the Federal Circuit indicated that rights may be "clearly established" by "a court decree, by ... a settlement agreement, or by a [trademark] registration." *Id.* In most cases, the registration applicant has no obligation to report other users.

In *Robi*, the Ninth Circuit affirmed this general rule, and found that a mark should be canceled because "clearly established" rights to the mark had been demonstrated prior to the application. *See Robi*, 918 F.2d at 1444 ("Given the adverse 1974 Decision, which denied FPI's claim that it

---

12. *See McCarthy* § 31:68 at 31–119.

13. *See McCarthy* § 31:68 at 31–120 [" ... [F]raud in trademark registration procurement, though often alleged, is seldom proven."].

was the only entity entitled to use the name "The Platters" and contained numerous findings adverse to FPI's ownership interest, the affidavit was, as the district court properly concluded, clearly false.") (citing *Rosso & Mastracco*, 720 F.2d at 1266). Thus, in the absence of "clearly established" rights in another user, the applicant for federal trademark registration has no obligation to investigate and report to the PTO other users of the same mark.

█ Given these standards for fraud in obtainment of a registration, it seems clear that Defendants have not pled and cannot sufficiently plead the facts required to merit cancellation. First, the only basis for their own rights to the "eCash" mark alleged in Defendants' Counterclaim is their registration of the "ecash.com" domain name. The Ninth Circuit has clearly said that mere registration of a domain name does not alone convey any rights to a trademark in the same name as the domain name. *See Brookfield Communications, Inc. v. West Coast Entertainment Corporation*, 174 F.3d 1036, 1052 (9th Cir. 1999).

Thus, Defendants' allegations do not at present even support the accrual of *any* trademark rights that conflict with those asserted in Plaintiff's application, let alone "clearly established" rights that Plaintiff would be required to disclose. Defendants have failed to even plead any other "use in commerce" of the mark that is sufficient to accrue any trademark rights in the "eCash" mark. A bare allegation of domain name registration cannot support an assertion of trademark rights. *See Brookfield*, 174 F.3d at 1052.

Second, Defendants argue that if dismissal is warranted on the basis of failure to show "clearly established" rights in the First Amended Counterclaim, they should be afforded leave to amend so that they may include additional allegations of their use of the "eCash" mark that would indicate that they *have* acquired trademark rights. *See* Amended Opposition at 2.[14] However, Defendants fail to comprehend the "clearly established" limitation on fraudulent registration. It is not enough that Defendants simply be able to show *some* common law rights to use the mark; they must be able to show that their rights were so "clearly established" that Plaintiff's failure to disclose Defendants' rights to the PTO would have to constitute fraud.

The "clearly established" requirement is really the converse of the "good faith" basis for an applicant's oath. For so long as no other user's rights have been "clearly established" (by court decree, settlement, or a competing registration), the applicant can adduce a "good faith" belief that he or she is the senior user. It is *only* when another's *rights*, not just *use*, are "clearly established," that "good faith" is eliminated. The other user's rights must be at least *equivalent* to, if not superior to, the applicant's own rights to the mark. *See Armstrong Cork Co. v. Armstrong Plastic Covers Co.*, 434 F.Supp. 860, 872 (E.D.Mo.1977) (requiring a "superior right").[15]

---

14. This is the portion of the argument in the Amended Opposition that the Court has said it would not consider. However, because it makes no difference to the Court's ultimate finding, the Court, in the interest of judicial economy, considers and rejects this argument.

15. *See, e.g., McCarthy* § 31:77 at 31–134 and 31–135 (quoting the Trademark Board (T.T.A.B.) as holding that "[t]his oath or declaration obviously does not require that another party's use of the same mark be disclosed to the Patent Office if the affiant is of the belief that such other party has no right to use said mark in commerce" and also as holding that it "does not require the applicant to disclose those persons whom he may have heard or noticed are using the same mark if

Thus, even if Defendants could amend their Counterclaim to add allegations of additional "use in commerce" of the "eCash" mark, and could thereby sufficiently plead their *own* rights to the mark, this would not be sufficient to show "clearly established" rights. There is simply no basis for Defendants to claim that their rights, if any, to the "eCash" mark were so "clearly established" that the failure by Plaintiff to divulge their use to the PTO constituted fraud.[16]

Therefore, the Court finds that Defendants have failed to allege sufficient facts to support a finding of fraudulent registration that would warrant cancellation of Plaintiff's mark. In addition, there appears to be no basis on which Defendants *could* sufficiently allege "clearly established" rights in themselves which rendered Plaintiff's registration fraudulent.[17] Accordingly, the Court hereby GRANTS the Rule 12(b)(6) Motion to Dismiss Defendants' federal counterclaim for cancellation of Plaintiff's trademark, with prejudice.

### B. Plaintiff's Motion to Dismiss the State Law Counterclaims

Plaintiff also moves under Rule 12(b)(6) to dismiss Defendants' state law counterclaims, with prejudice, arguing (1) that any

claims based on the May 31, 2000 letter are barred as a matter of law by the privilege under Section 47(b) of the California Civil Code for any communication related to pending litigation, and (2) that in any case Defendants have not pled and cannot plead special damages, required to support claims of trade libel or slander of title. *See* Motion at 6–8.

■ Defendants apparently agree with at least some of Plaintiff's arguments, as they belatedly seek to voluntarily dismiss all state claims arising out of the letter.[18] Defendants seek dismissal without prejudice. Under Ninth Circuit authority, the Court must accept the Defendants' "notice" of voluntary dismissal, as it was submitted prior to any answer or motion for summary judgment on the counterclaims by Plaintiff. *See, e.g., Concha v. London,* 62 F.3d 1493, 1506 (9th Cir.1995) (voluntary dismissal of one of several defendants, or claims, is permitted); Fed.R.Civ.Pro. 41(a)(1). Therefore, the dismissal of any and all claims arising out of the May 31, 2000 letter will be without prejudice. However, because Defendants' notice was submitted so late, and because the parties have fully briefed the viability of Defendants' state-law claims, the Court will dis-

---

he believes that the rights of such others are not *superior to his.*").

16. A third basis for dismissal also suggests itself, though it is not argued by Plaintiff: Plaintiff's predecessor in interest actually filed the initial application six months *before* Defendants registered their domain name, so that at least the *initial* application *could* not have been fraudulent. However, because this might not have changed Plaintiff's continuing "duty" to disclose "clearly established" rights that arose during the pendency of the application, and because facts about why there was such a long expanse of time between the original application and the eventual issuance (five years) were not provided to the Court, the Court will not rely on this basis for dismissal.

17. It is also not at all clear that Defendants have complied with the heightened pleading standard under Federal Rule of Civil Procedure 9(b) for any allegation of fraud or mistake.

18. The state law claims most *clearly* premised on the May 31, 2000 letter are the claims for trade libel and slander of title. However, all of Defendants' other state law counterclaims are also premised, at least in part, on the contents of the letter. *See* FACC ¶¶ 22–38 (the bases for unlawful/unfair business practices and unfair competition claims are "fraud" of the registration *and* the May 31, 2000 letter).

cuss whether any of Defendants' claims could survive on their merits. This also becomes necessary because Defendants argue that *some* claims survive.

### 1. The Scope and Application of the Section 47(b) Privilege

■ It seems clear as a matter of settled California law that the letter at issue in this case would be subject to the privilege under Section 47(b) for communications "with 'some relation' to judicial proceedings." *Rubin v. Green,* 4 Cal.4th 1187, 1193, 17 Cal.Rptr.2d 828, 847 P.2d 1044 (1993). This privilege has been given an "expansive reach" by California courts, as recognized by the California Supreme Court. *See Rubin,* 4 Cal.4th at 1194, 17 Cal.Rptr.2d 828, 847 P.2d 1044. This privilege affords absolute immunity against tort liability arising out of such a communication, regardless of attempts by the "plaintiff" to "plead around" this "absolute barrier." *See id.* at 1201–02, 17 Cal. Rptr.2d 828, 847 P.2d 1044. Thus, the immunity applies regardless of the particular label given to the cause of action (e.g., unfair competition).

Section 47(b) protects participants in judicial proceedings from derivative tort actions based on communications in or regarding the judicial proceeding. *See Dove Audio, Inc. v. Rosenfeld,* 47 Cal.App.4th 777, 781–83, 54 Cal.Rptr.2d 830 (1996) (holding that letter to possible co-claimants seeking support for filing of suit was covered by the privilege). A "communication[ ] preparatory to or in anticipation of the bringing of an action or other official proceeding [is] within the protection of the litigation privilege of Civil Code section 47, subdivision (b)." *Id.* at 784, 54 Cal.Rptr.2d 830; *see also Rubin,* 4 Cal.4th at 1194, 17 Cal.Rptr.2d 828, 847 P.2d 1044 ("numerous

decisions have applied the privilege to prelitigation communications"). Thus, a communication merely informing a third party of the *pendency* of this litigation must clearly fall within the privilege.

Even if it did not, there is nothing "false or misleading" about the contents of the letter. The letter merely states what is clearly true, that litigation regarding Plaintiff's and Defendants' rights to the "eCash" mark was at the time ongoing in federal court.

Though Defendants argue that it was the citation of *Letica Corp. v. Sweetheart Cup Co.,* 790 F.Supp. 702, 707 (E.D.Mich. 1992) that led them to see the wisdom of dismissing their claims, this case is not the dispositive case that Defendants would make it seem.[19] While the court in *Letica* does authoritatively state that a trademark owner is "entitled to advise others of his trademark rights ... [and] to inform others that he is seeking to enforce his rights through legal proceedings," [20] that principle is obvious under both federal and state law and does not depend on the non-binding holding in *Letica.* Part and parcel of the rights of a trademark owner are the rights of that individual to defend those rights. Surely Defendants cannot claim that it was only upon reading *Letica* that they had this epiphany.

For all the foregoing reasons, the Court therefore finds that the May 31, 2000 letter from Plaintiff's counsel to Afternic.com falls within the absolute privilege afforded to communications regarding judicial proceedings under Section 47(b). As a result, dismissal is proper for any claims premised on the contents of this letter.

---

**19.** As has already been indicated, *Letica* was in any case cited in Plaintiff's initial moving papers, belying Defendants' claim.

**20.** *Letica,* 790 F.Supp. at 707.

### 2. Special Pleading Requirements for Trade Libel and Slander

Defendants' claims of trade libel and slander of title are among those barred by the absolute privilege of Section 47(b). Therefore, although the Court finds persuasive Plaintiff's argument that these claims are also barred for failure to plead special damages,[21] the Court would not need to reach this argument on dismissal.

### 3. The "Surviving" Unfair Competition Claim

In apparently conceding the application of Section 47(b) to the claims premised on the May 31, 2000 letter, Defendants argued in the "Amended Opposition" that in addition to the federal claim seeking cancellation of Plaintiff's registered trademark, Defendants stated a claim for unfair business practices and unfair competition. These claims, though primarily premised on the May 31, 2000 letter, which Defendants now concede cannot form the basis for any claim, apparently are also premised on the "unfair" and "unlawful" practice of fraud in the registration of the federal trademark.[22] However, for the same reasons that Defendants could not state a cause of action for fraud, they are unable to state derivative state law actions on this basis. Therefore, there is no surviving basis to sustain any state claim.

### 4. Dismissal of all State Law Counterclaims

Pursuant to Rule 12(b)(6), Defendants would therefore be unable to state claims under California law for trade libel, slan-der of title, or any other torts premised on the May 31, 2000 letter. Nor is there any other basis on which Defendants can assert these state law claims. All of those claims premised on the letter, pursuant to the "notice" submitted by Defendants, are DISMISSED, without prejudice. Any state law claims premised on any *other* factual basis, however, also cannot survive, and are DISMISSED, with prejudice.

### C. Plaintiff's Motion to Strike Defendants' State Law Counterclaims

Plaintiff also argues that for the same reasons that they are subject to dismissal under Rule 12(b)(6), Defendants' claims are also subject to a Motion to Strike pursuant to California Code of Civil Procedure § 425.16. That is, because any claims premised on the May 31, 2000 letter are absolutely barred by immunity under Section 47(b), Defendants cannot meet their burden to show a likelihood of success on these claims. The Court proceeds on the Motion to Strike the state law counterclaims despite Defendants' voluntary dismissal, due to the possibility that if a Motion to Strike would be appropriate under Section 425.16, Plaintiff is entitled to fees and costs. *See, e.g., Liu v. Moore,* 69 Cal.App.4th 745, 751, 81 Cal.Rptr.2d 807 (1999) (court should consider the merits of a motion to strike despite voluntary dismissal).

It is Plaintiff's initial burden to show that the counterclaims in this case arose out of conduct "in furtherance of ... free speech under the Constitution ... in con-

---

**21.** *See Isuzu Motors Limited v. Consumers Union of United States,* 12 F.Supp.2d 1035, 1047 (C.D.Cal.1998) (special pleading required).

**22.** Aside from the conclusory allegation that Defendants continue to have claims for unfair/unlawful business practices and/or unfair competition, Defendants provide no explanation for the *basis* for these claims. Nor do they cite any authority supporting their continuing viability. The Court can only presume, based on their presentation in the same sentence as the allegedly viable federal cancellation claim, that they are premised on the same "fraudulent" conduct. *See* Amended Opposition at 2. In any case, Defendants fail to state a claim.

nection with a public issue." Cal.Civ.Pro. Code § 425.16(b); *Newsham*, 190 F.3d at 971. The "conduct" at issue is the May 31, 2000 letter. This letter clearly fits within the conduct that is subject to the protections of the "Anti–SLAPP" law. The plain language of the statute defines "in connection with a public issue" to include "any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body . . ." Cal.Civ.Pro.Code 5 425.16(e)(2). As the California Supreme Court has definitively held, statements in relation to pending or upcoming litigation (a "public issue") are covered by Section 425.16 without any separate requirement that they be shown to be "an issue of public significance." *See Briggs v. Eden Council for Hope and Opportunity*, 19 Cal.4th 1106, 1123, 81 Cal. Rptr.2d 471, 969 P.2d 564 (1999).

Plaintiff's burden to show this connection being met, it falls to Defendants to establish a "probability that [they] will prevail on the claim." Cal.Civ.Pro.Code § 425.16(b); *Newsham*, 190 F.3d at 971. For the same reasons that Defendants' claims premised on the letter failed above, however, Defendants are unable to do so. The claims premised on the letter are barred by the absolute immunity of Section 47(b) of the Civil Code. Therefore, Defendants have asserted claims impairing Plaintiff's First Amendment freedoms of speech and of petition, and have done so without probability of success. The letter was clearly sent "in connection with" the case,[23] and yet Defendants filed the instant counterclaims in derogation of Plaintiff's rights.

For this reason, the Court finds merit in Plaintiff's Motion to Strike the state law counterclaims premised on the letter.

These are the trade libel and slander of title claims, and all the other state law counterclaims to the extent that they are premised on the letter. However, the Court does not *decide* this Motion, since it is mooted by the voluntary dismissal of these claims. Discussion of the merits of the Motion was a necessary precursor to discussion of attorneys' fees and costs under Section 425.16, but it would be improper to grant or deny the motion after Defendants' voluntary dismissal of the relevant claims. *See Kyle v. Carmon*, 71 Cal. App.4th 901, 908–18, 84 Cal.Rptr.2d 303 (1999) (the court should not grant a motion to strike after a voluntary dismissal, but should consider the merits of the motion for the purpose of the award of attorneys' fees and costs under Section 425.16(c)).

### D. Attorneys' Fees and Costs Under Section 425.16(c)

■ The attorneys' fees provision of Section 425.16 also applies in federal court, and declares that an award of attorneys' fees to a moving party is mandatory if a special motion to strike is granted. *See* Cal.Civ.Pro.Code § 425.16(c) ("a prevailing party [ordinarily a defendant, but plaintiff in this case] on a special motion to strike *shall* be entitled to recover his or her attorneys' fees and costs") (emphasis added). Plaintiff is a "prevailing party."

This conclusion is not diminished by Defendants' belated attempt to voluntarily dismiss those claims premised on the letter. It seems clear that Defendants took this action merely to try to avoid an award of attorneys' fees and costs under Section 425.16. However, the law in California is clear that even though these claims were

---

**23.** *See, e.g., Lafayette Morehouse, Inc., v. Chronicle Publishing Company,* 37 Cal. App.4th 855, 863, 44 Cal.Rptr.2d 46 (1995) (holding that newspaper articles reporting on official proceedings are "writing[s] made in connection with an issue under consideration or review . .")

voluntarily dismissed, this does not absolve the Defendants of liability for fees and costs incurred by Plaintiff in striking these counterclaims. *See, e.g., Kyle v. Carmon,* 71 Cal.App.4th 901, 918–19, 84 Cal.Rptr.2d 303 (1999) (affirming award of attorneys' fees following voluntary dismissal); *Liu v. Moore,* 69 Cal.App.4th 745, 755, 81 Cal. Rptr.2d 807 (1999) (voluntary dismissal does not preclude award of attorneys' fees); *accord Coltrain v. Shewalter,* 66 Cal.App.4th 94, 107–108, 77 Cal.Rptr.2d 600 (1998). In *Coltrain,* the court even found that when a voluntary dismissal follows the filing of a motion to strike, there is a "presumption" that the moving party is the "prevailing party." *See Coltrain,* 66 Cal.App.4th at 107–08, 77 Cal.Rptr.2d 600 (finding entitlement to fees).

Plaintiff has not yet filed a Motion for Attorneys' Fees incurred in moving to strike the state law counterclaims. Plaintiff may timely file such a motion pursuant to the authority of Section 425.16(c).

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's Motion to Dismiss the federal law counterclaim for cancellation of Plaintiff's federally registered trademark, with prejudice.[24] Defendants' state law counterclaims premised on the May 31, 2000 letter are DISMISSED, without prejudice. The Court GRANTS Plaintiff's Mo-

tion to Dismiss the state law counterclaims, as to all state law counterclaims premised on facts other than the May 31, 2000 letter, with prejudice. Finally, the Court declares Plaintiff to be a "prevailing party" pursuant to California Code of Civil Procedure § 425.16, thereby entitled to fees and costs incurred in striking the non-meritorious counterclaims.

---

**24.** In the First Amended Counterclaim, Defendants also requested a declaratory judgment of non-infringement. This prayer for relief was apparently premised on Defendants' claim that Plaintiff's trademark was registered fraudulently, and was therefore invalid/unenforceable. Defendants seemed to assume that if the registration were canceled, they could not be liable for infringement. As has been stated, such an assumption neglects the continuing common law trademark rights that Plaintiff may have enjoyed even if its registration were canceled.

In any case, Defendants' prayer for a declaratory judgment of non-infringement was not based on any *factual* or *legal* argument that Defendants have not infringed the mark owned by Plaintiff. There is no assertion that Defendants are entitled to such declaratory relief on any basis independent of the claim for fraudulent registration. It is apparent that Defendants' claim for declaratory relief is wholly derivative of their claim for cancellation. Therefore, the dismissal of the fraudulent registration claim also disposes of the prayer for declaratory relief. However, to be abundantly clear the Court also hereby DISMISSES Defendants' claim for a declaratory judgment.